[S. F. No. 14390. In Bank.—November 18, 1931.]

CENTRAL MANUFACTURING DISTRICT, INC. (a Corporation), et al., Petitioners, v. STATE BOARD OF EQUALIZATION et al., Respondents.

Gibson, Dunn & Crutcher and Woodward M. Taylor for Petitioners.

Pillsbury, Madison & Sutro, Alfred Sutro and Eugene M. Prince, *Amici Curiae* on Behalf of Petitioners.

U. S. Webb, Attorney-General, H. H. Linney, Deputy Attorney-General, Everett W. Mattoon, as County Counsel and *in pro. per.*, and Gordon Boller, Deputy County Counsel, for Respondents.

Frank Karr, R. E. Wedekind, H. C. Lucas, Orla St. Clair, Roy V. Reppy and E. W. Cunningham, *Amici Curiae.*

SHENK, J.—This is an application for a writ of *mandamus.*

The petitioner, Central Manufacturing District, Inc., is a private nonpublic utility corporation. It is the owner in fee of certain real property and improvements situate in the city of Los Angeles. The improvements consist of railroad tracks, rights of way, buildings, structures and appliances suitable to the operation of a railroad. The petitioner,

Los Angeles Junction Railway Company, is a public utility railroad corporation having its principal office and carrying on a common carrier interstate and intrastate railroad business in Los Angeles County. On October 10, 1925, the petitioner Central Manufacturing District, Inc., leased to the petitioner Los Angeles Junction Railway Company said real property and improvements on a stipulated annual rental,. and said lessee is using, and since the execution of said lease, has used, the real property and improvements exclusively in the conduct of its public utility business. The surface of said real property is entirely occupied by the railroad property and improvements so used, and the lessor has, during the existence of said lease, no possession or control, or right to exercise possession or control, of said real property and improvements. The lessee is required under said lease to pay all taxes lawfully assessed against the railroad tracks, rights of way, building and structures placed upon said real property.

On April 10, 1931, the lessee public utility corporation duly filed with the respondent State Board of Equalization a report of all of its operative property for the year ending December 31, 1930. A copy of this report was served on the county assessor of Los Angeles County on April 9, 1931. This report contained a description of all of the real property and improvements covered by said lease, and set forth that all of said property was necessary to and was used exclusively in the operation of its said public utility railroad business. On April 28, 1931, the county assessor of Los Angeles County addressed a communication to the State Board of Equalization objecting and excepting to said report on the ground that the interests of the railway company were limited to the value of the leasehold on and in said property as of the first Monday in March, 1931; "that such value cannot and does not comprise the total worth of the aforesaid properties, as there is an interest in each property existing as of said first Monday in March, not embraced within the limited rights to the use thereof, as evidenced by the said lease, viz.: the reversionary interest therein; that said reversionary interests as of said first Monday in March, comprise taxable property, as defined by the Constitution and laws of this state, which, on said first Monday in March, was not, nor is it now, either owned or used by said railway

company in the conduct of its business; that said reversionary interests were on said date and now are vested in the owners of the fee simple estate of said properties and are taxable as non-operative property under the laws of this state''. The assessor requested the State Board of Equalization to order: ''that the reversionary interests, as of the first Monday in March, 1931, in the aforesaid real estate, consisting of land and improvements, be returned to the non-operative roll of said county''.

After hearings duly had the State Board of Equalization sustained the objections of the county assessor and ordered that the reversionary interest of the lessor in and to said real property and improvements be placed on the non-operative roll of said county. Thereafter and within the time provided by law, the county assessor assessed against the lessor and entered upon the assessment-roll of said county said reversionary interest in and to all of said real property and improvements. It is alleged and not denied that the assessment so made by the county assessor for local purposes is in approximately the same amount it would have been had none of said real property and improvements been used as operative property. Thereafter and on July 17, 1931, the petitioners herein filed with the respondent board of supervisors, pursuant to section 3804a of the Political Code, their joint petition for the cancellation of said assessments so levied and entered on the assessment-roll of Los Angeles County, and requested the respondent county counsel to consent to such cancellation. The petition was denied and the consent was refused. Whereupon this proceeding was instituted to compel the State Board of Equalization to correct its said ruling and order placing said property on the nonoperative roll; to compel the county counsel to consent to the cancellation of said assessment for local purposes, and to compel the board of supervisors to cancel said assessment, on the ground that said local assessment is void under the Constitution and laws of this state and of the United States. It is conceded that *mandamus* is the proper remedy.

The question is presented whether the reversionary interest of the lessor in property leased to and used exclusively as operative property by a public utility corporation is assessable and taxable locally for county and municipal purposes when such property is exclusively so used and is prop-

erly reported, and the gross receipts taxes provided by law are paid to the state by said public utility corporation.

The position of the petitioners is stated substantially as follows: That under section 14 of article XIII of the Constitution of the state and laws enacted pursuant thereto, the gross receipts tax is not an income or earnings tax but is a substituted property tax measured by gross receipts; that this substituted tax rests on all property, tangible and intangible, which is used in public utility service, because all property so used contributes directly or indirectly to the gross receipts by which the substituted tax is measured, and it contributes in exactly the same way whether it is owned or leased; that the rates of the gross receipts were purposely fixed so as to make the substituted tax on property used in public utility service the fair equivalent of the general *ad valorem* tax on like property not used in public utility service; that the gross receipts tax paid by the public utility includes a tax on all property used by the public utility in earning the gross receipts and, therefore, under the Constitution and statutes of this state there can be no local taxation of such property, whether owned or leased by the public service corporation; that if the public utility, through its gross receipts tax, pays a substituted tax on the full value of the leased property used in the public service, and if at the same time the lessor is required to pay a local tax on the full value of the leased property so used, double taxation necessarily results; that since no other property in the state is subject to such double taxation it follows that the same would be discriminatory and therefore unconstitutional.

It is the position of the respondents that the entire value of the *corpus* of the property cannot be considered as vested in a lessee for purposes of taxation, leaving no taxable interest in the owner; that the right of the owner to receive the rents, to enforce his contract and to receive back his property upon default in the lease or upon its expiration, and all other rights therein, viz., the reversionary interest, is property and therefore is taxable to the owner no matter who holds the lease òr who uses the physical property; in other words, that the gross receipts tax rests not on the property used in public service, but on the title or interest of the operating public utility in that property.

██ It is the general rule that there can be but one assessment of the entire estate in real property, which assessment includes the value of both the estate for years and the remainder or reversion, and the mortgagor or lessor of the real estate is liable for the taxes thereon. (*Graciosa Oil Co.* v. *County of Santa Barbara,* 155 Cal. 140, 143 [20 L. R. A. (N. S.) 211, 99 Pac. 483].) There are certain exceptions to this general rule. Where the reversion is exempt from taxation, for example, when it is owned by the state, the leasehold may be separately assessed. (*San Pedro etc. R. R. Co.* v. *Los Angeles,* 180 Cal. 18 [179 Pac. 393].) In oil leases the leasehold and the reversion may be separately assessed, owing to the peculiar nature of such leasehold interest as distinguished from a usufructuary leasehold. (*Graciosa Oil Co.* v. *County of Santa Barbara, supra.*) These exceptions have no application to the present case. Here we are considering a change in the method of taxation, a substituted tax, and no exemptions are involved. (*San Bernardino* v. *State Board of Equalization,* 172 Cal. 76 [155 Pac. 458].) ██ Here we have a gross receipts tax on operative property. As to such property there is no occasion for its valuation or assessment as such. The equivalent of such valuation and assessment is inherent in the gross receipts tax. ██ When, as here, such substituted tax is not only permissible but mandatory, what is the status of the reversion when the operative property embraces all possessory and usufructuary rights in the property and has been taxed substantially to the full value of both estates in the property? The petitioners contend that this question is answered conclusively by the case of *Hopkins* v. *Southern Cal. Tel. Co.,* 275 U. S. 393 [72 L. Ed. 329, 48 Sup. Ct. Rep. 180]; and by the later and recent decision of this court in *Morgan Adams, Inc.,* v. *Los Angeles,* 209 Cal. 696 [289 Pac. 811]. The respondents concede that these cases "are to some extent opposed" to their contentions, but they attempt to distinguish them on the facts. In the Hopkins case a futile effort was made to tax locally certain personal property used by the telephone company in its public utility business but held by it under lease from the owner. In the Morgan Adams, Inc., case it was ineffectually sought to tax locally a ten-story building leased by the telephone company and used in its public service. In the pres-

ent case the effort is made to tax to the owner of the fee the reversionary interest in the leased property. But in arriving at the value of the reversionary interest for the purpose of the assessment and levy of taxes for local purposes the assessment is made practically the same as it would have been had the property not been leased or used for public utility purposes. In other words, the respondents must be deemed to contend that it is lawful to require the public utility to pay a substituted tax to the state on the whole value of the property, and at the same time to require the owner of the reversionary interest to pay a local tax on the practical equivalent of that value. It seems obvious that this would result in double taxation and on principle be contrary to the holdings in the Hopkins and Morgan Adams, Inc., cases.

Theoretically it may be said that the reversionary interest now sought to be taxed is property, but when, as here, the entire possessory and usufructuary rights and interests in and to said property are necessarily taxed for state purposes, there is nothing left beneficially for local taxation. If it be conceded that under the admitted facts the reversionary interest is subject to taxation at a nominal valuation, the answer is that there is here no attempt to fix and impose a nominal valuation and assessment, but an endeavor in support of the local tax which would have the effect, if approved, of subjecting the same property to a burden of double taxation.

Under the authorities the petitioners' contentions must be sustained and the local tax sought to be imposed be declared unlawful.

Let the peremptory writ issue as prayed.

Seawell, J., Curtis, J., Langdon, J., Preston, J., Richards, J., and Waste, C. J., concurred.

Rehearing denied.