[S. F. No. 14970. In Bank.—August 6, 1934.]

CONSOLIDATED TITLE SECURITIES COMPANY (a Corporation), Petitioner, v. ED W. HOPKINS, County Assessor, etc., Respondent.

Walter B. Kibbey and William H. B. Haymond for Petitioner.

Everett W. Mattoon, County Counsel, and Gordon Boller, Deputy County Counsel, for Respondent.

SEAWELL, J.—Petition for writ of mandate. Petitioner, Consolidated Title Securities Company, leased a title searching plant owned by it to Security Title Insurance and Guarantee Company, a title insurance company with offices in the city of Los Angeles. The notice of personal property taxes served on petitioner on July 11, 1933, by respondent County Assessor of Los Angeles County charged petitioner with taxes in the sum of $12,029.62, levied on office equipment, a law library and title searching plant, assessed respectively at $12,070, $750 and $270,230. Petitioner contends that said property is not subject to local taxation by virtue of the fact that it is in the sole possession and use of petitioner's lessee, a title insurance company which annually pays a tax to the state based on gross premiums under the provisions of article XIII, section 14, subdivision b, state

Constitution. Petitioner is not itself a title insurance company. It tendered to respondent assessor the sum of $74.99, which is the amount charged to it in said tax notice for taxes on notes and solvent credits. Upon the refusal of the assessor to issue a receipt showing payment of the tax bill in full, petitioner deposited the sum tendered in a bank in the name of the assessor, and thereafter brought this proceeding in *mandamus* to compel the assessor to issue to it a receipt in full. Petitioner alleges that the tax officials of other counties are also seeking to subject similar property in their respective counties owned by petitioner and in the possession of its lessee to local taxation.

■ Under the decisions of this court in *Whitmore* v. *Brown,* 207 Cal. 473 [279 Pac. 447], and *Central Mfg. Dist.* v. *State Board of Equalization,* 214 Cal. 288 [5 Pac. (2d) 424], and the decision of the Appellate Court in *Spring Valley Water Co.* v. *Planer,* 88 Cal. App. 170, [263 Pac. 323], in which a petition for hearing in this court was denied, an original proceeding in *mandamus* is a proper remedy to compel the issuance of an official receipt in full.

■ The provision of section 14, subdivision b, article XIII, which petitioner contends frees the personal property owned by it and in the possession of its lessee, a title insurance company, from local taxation is as follows:

"Every insurance company or association doing business in this state shall annually pay to the state a tax of one and one-half per cent upon the amount of the gross premiums received upon its business done in this state, less return premiums and reinsurance in companies or associations authorized to do business in this state; provided, that there shall be deducted from said one and one-half per cent upon the gross premiums the amount of any county and municipal taxes paid by such companies on real estate owned by them in this state. This tax shall be in lieu of all other taxes and licenses, state, county and municipal, *upon the property of such companies,* except county and municipal taxes on real estate. . . . " (The balance of the paragraph is not pertinent to the inquiry before us. Italics supplied.)

Section 14 was amended in June, 1933, when our tax system was changed in important particulars by initiative vote of the people. The initiative measure provided, however, that the provisions amendatory of section 14 should not

go into effect until January 1, 1935. As will appear from our discussion hereinafter, the amendments made in the paragraph of said section which affects insurance companies (section 14, subdivision b), do not change the law with regard to the question now before us—whether personal property not owned by an insurance company, but in its exclusive possession under lease and used by it in the conduct of its business, is free from local taxation under the ''in lieu'' provision of section 14, subdivision b, quoted above.

In contending that such leased property cannot be taxed locally to the owner-lessor petitioner relies strongly on the decisions of this court in *Morgan Adams, Inc.,* v. *County of Los Angeles,* 209 Cal. 696 [289 Pac. 811], and *Central Mfg. District, Inc.,* v. *State Board of Equalization, supra,* and the decision of the Supreme Court of the United States in *Hopkins* v. *Southern California Tel. Co.,* 275 U. S. 393 [48 Sup. Ct. 180, 72 L. Ed. 329]. These cases involved the interpretation of the provisions of section 14, subdivision a, article XIII, Constitution, which provide for the payment of a gross receipts tax to the state by certain designated public utility corporations. In the cited cases the leased property upon which the local authorities sought to charge the owner with local *ad valorem* property taxes consisted respectively of a concrete building occupied by the lessee telephone company exclusively for its office quarters; real property and improvements consisting of railroad tracks, rights of way, buildings, structures and appliances suitable to the operation of a railroad, which property was owned by a private nonpublic utility corporation and leased to a public utility railroad corporation; and, in the federal case, 300,000 telephone instruments, or ''talking sets'', used by the lessee company in the operation of its telephone system. In each case it was held that the property was not subject to local taxation.

There are important distinctions between those provisions of section 14, subdivision a, article XIII, establishing the public utilities gross receipts tax and the provisions of section 14, subdivision b, under which insurance companies are required to pay a gross premiums tax, by reason of which the decisions under the public utilities tax provision are not necessarily controlling as to insurance companies. Under the constitutional provision as it continues

in effect until January 1, 1935, the enumerated public utilities are required to pay to the state a tax equal to fixed percentages of their gross receipts from operation within this state *"upon* their franchises, roadways, roadbeds, rails, rolling stock, poles, wires, pipes, canals, conduits, rights of way and *other property,* or any part thereof, *used exclusively in the operation of their business in this state".* The section makes provision for determining "gross receipts within this state", when such companies are operating partly within and partly without the state. The tax based on gross receipts "is in lieu of all other taxes and licenses, state, county and municipal upon the property enumerated of such companies, except as otherwise in this section provided". (Italics supplied.) Sections 3664–3671, Political Code, restate the constitutional provision, define the term "operative property", and otherwise elaborate the scheme of taxation provided for by the Constitution.

It is held that payment of the gross receipts tax by the lessee public utility company frees leased property used by the utility in the operation of its business from local taxation for the reason that the gross receipts tax is a tax upon all property used in the operation of the utilities business in this state, whether such property is leased or owned by the utility. (*Morgan Adams, Inc.,* v. *County of Los Angeles, supra; Central Mfg. District, Inc.,* v. *State Board of Equalization, supra; Hopkins* v. *Southern California Tel. Co., supra.*) By the terms of the constitutional provision the tax is upon all property used in the operation of the business in this state. In our decision in *Southern California Tel. Co.* v. *Los Angeles County,* 212 Cal. 121 [298 Pac. 9, 11], we said concerning it: " . . . the tax levied upon gross receipts is a substituted tax, intended to be the equivalent of a tax on the property, and only differing from a tax directly on the property by reason of the fact that a different method of computation is employed. (See *San Francisco* v. *Pacific Tel. & Tel. Co.,* 166 Cal. 244 [135 Pac. 971]; *Pullman Co.* v. *Richardson,* 185 Cal. 484 [197 Pac. 346].)" The theory of the tax, as explained in the decisions, is that gross receipts from operation furnish a fair measure for estimating the value of operative property and computing the tax upon it. Inasmuch as the gross revenues from operation do not depend upon whether the operative property is leased or

owned, and the amount of the tax is the same whether such property is leased or owned, the tax rests upon *operative* property without regard to its ownership, and to assess a local *ad valorem* tax against the owner on leased operative property is unauthorized double taxation. (*Morgan Adams, Inc.,* v. *Los Angeles County, supra,* at p. 702; *Central Mfg. District, Inc.,* v. *State Board of Equalization, supra.*) That is, the criterion adopted by the constitutional provision to determine freedom from local taxation is *use* in the public utility's business, rather than *ownership* by the utility. Property which is not in use in the operation of the business of the utility, such as a building in course of construction and the land upon which it is situate, although owned by the utility, is neverthelsss subject to local taxation. (*Southern California Tel. Co.* v. *County of Los Angeles, supra.*)

■ But the provisions of section 14, subdivision b, article XIII, which provide for the gross premiums tax to be paid by insurance companies make no such classification between operative property without regard to ownership, on the one hand, and non-operative property on the other. Intangibles, such as stocks, bonds, mortgages and other se- ·curities in which the average insurance company invests a large portion of its receipts in order to provide a fund to meet losses, are free from local taxation under the "in lieu" provision of section 14, subdivision b, but are not "used" in the conduct of the insurance company's business in the sense that operative property of a public utility corporation is used in the operation of its business. ■ The gross premiums tax required to be paid by insurance companies, although in lieu of certain taxes *upon* property, is not, like the public utilities gross receipts tax, by the terms of the constitutional provision itself a tax *upon* property. Rather, it is a franchise tax exacted for the privilege of doing business in this state, and is recognized as such in the amendment to section 14 which goes into effect on January 1, 1935. Said amendment abolishes the public utilities gross receipts tax, and provides that all property *owned or used* by the specified utilities, other than their franchises, shall be subject to taxation to the same extent and in the same manner as other property at a value fixed by the state board of equalization annually. Said amendment further provides

that the specified utilities shall pay a franchise tax to the state measured by net income under section 16 of article XIII, but this provision is especially made inapplicable to insurance companies, as to which the gross premiums tax is continued in force. Federal securities exempt from a property tax are generally included in an insurance company's holdings.

The insurance company gross premiums tax frees from local taxation, except taxes on real estate, all "property of such companies". Use of personal property in the conduct of the insurance company's business is not the factor which determines freedom from local taxation. From a consideration of the constitutional provision relating to the gross premiums tax as a whole, and particularly the provision permitting the deduction from the amount of the gross premiums tax of all taxes paid by an insurance company on real estate "owned" by it, we are convinced that ownership by the insurance company is the factor which determines freedom of personal property from local *ad valorem* taxation. The gross premiums tax is not in lieu of taxes on real estate, but real property owned by an insurance company, or in its possession under lease from the owner, is subject to local *ad valorem* property taxes. The constitutional section provides, however, that insurance companies may deduct from the fixed percentage of gross premiums payable as a tax the amount of any taxes paid "on real estate *owned* by them in this state". Thus, although as regards the tax collecting authorities the real property owned by an insurance company remains subject to a local *ad valorem* tax, in so far as the tax-paying company is concerned it is made clear that it shall not be required to pay an *ad valorem* tax on real property owned by it in addition to the full amount of the gross premiums tax, but the fixed percentage of gross premiums is the full measure of the tax burden upon it. By the terms of the constitutional provision the offset or deduction is allowed only for taxes paid on real estate *owned* by insurance companies. *Ad valorem* taxes assessed against real property in their possession under lease from the owner are not permitted to be deducted. Any other construction would do violence to the meaning of the word "owned". Personal property *owned* by an insurance company is relieved of the burden of local

*ad valorem* taxes directly under the "in lieu" provision, rather than indirectly by deduction of the tax paid locally from the sum payable as a gross premiums tax, as in the case of real property. But we are unable to find that by virtue of this difference personal property *leased* to an insurance company is free from local taxes, while real property leased to such a company remains subject thereto. The constitutional provision does not authorize a different rule to be applied to personal property leased to an insurance company than is applied to real property leased to such a company.

We are mindful that under section 14, subdivision a, article XIII, property used in the operation of the business of public utilities is "their property" and the "property of such companies", but this is because use in the operation of the utilities business is the test therein adopted.

The alternative writ of mandate is discharged and the peremptory writ is denied.

Curtis, J., Preston, J., Shenk, J., and Waste, C. J., concurred.

Rehearing denied.

Curtis, J., and Preston, J., voted for a rehearing.