[Civ. No. 147. Fifth Dist. Oct. 29, 1962.]

CHARLES PAUL, as Director of Agriculture, Plaintiff and Appellant, v. ALLIED DAIRYMEN, INC., Defendant and Respondent.

Stanley Mosk, Attorney General, John Fourt, Sanford N. Gruskin and Lawrence E. Doxsee, Deputy Attorneys General, for Plaintiff and Appellant.

Emil Steck, Jr., as Amicus Curiae on behalf of Plaintiff and Appellant.

Walch, Griswold, Braden & Dittmar and S. C. Dittmar, Jr., for Defendant and Respondent.

CONLEY, P. J.—Involved on this appeal is the basic question whether the trial court committed prejudicial error in finally ruling on the merits of the suit on a preliminary injunction hearing and dismissing the case on the alleged ground of lack of jurisdiction.

The suit was brought by the Director of Agriculture of the State of California, Charles Paul, to restrain Allied Dairymen, Inc., defendant and respondent, from violating the applicable minimum producer price regulations concerning fluid milk and other dairy products. Allied Dairymen, Inc., is an association of producers whose farms are located in the southerly part of the San Joaquin Valley in the vicinity of the City of Tulare; it is organized under chapter 4 of division 6 of the Agricultural Code, and the nonprofit association is licensed by the state as a milk distributor.

On July 12, 1961, the Director of Agriculture (hereinafter referred to as Director) notified all milk distributors that California's minimum producer price regulations would be enforced without exception, noting that the United States District Court, Northern District of California, had previously enjoined him from enforcing minimum wholesale and minimum producer price regulations with respect to milk sold to agencies of the United States but that on July 3, 1961, the United States Supreme Court had stayed that portion of the district court's order which enjoined the enforcement of minimum producer price regulations (*United States* v. *Warne* (1960) 190 F.Supp. 645, review granted sub. nom., *Paul* v. *United States* (No. 239) (1962) 368 U.S. 965 [82 S.Ct. 437. 7 L.Ed.2d 394]).

Under the California Milk Stabilization Act (Agr. Code, div. 6, ch. 17), originally enacted in 1935 to regulate California's dairy industry in order to place it upon a solid economic basis and to insure the payment to the producer of compensation sufficient to permit him successfully to carry on his farming venture, the Director established minimum producer prices (the prices at which distributors may purchase milk from producers) and minimum wholesale prices (the prices at which distributors may sell milk to retailers and others). In 1960 the United States brought two suits in the

United States District Court, Northern District of California, to enjoin the Director and the Attorney General of California from enforcing the minimum wholesale price regulations with respect to milk purchased by the federal government at Oakland Army Terminal, Travis Air Force Base and Castle Air Force Base. A three-judge district court issued the requested injunction on two grounds: it concluded that the United States had acquired exclusive jurisdiction over these military bases, and it also found that the milk stabilization act conflicts with the Armed Services Procurement Act of 1947 (62 Stat. 21, 10 U.S.C.A. §§ 2301-2314). The Director and the Attorney General of California have appealed the district court's decision directly to the United States Supreme Court; the case is on the current calendar of the Supreme Court. An application for a stay on appeal of that portion of the district court's order which enjoined the enforcement of minimum producer price regulations was made to the Supreme Court in July of 1961, the requested stay was unopposed, and, as already stated, it was granted by that court and became effective on July 3, 1961. The memorandum filed by the United States in response to the jurisdictional statement in that case contains the following significant language:

"There is no longer any necessity for the Court to consider whether appellants can constitutionally enforce the established California minimum *producer* prices with respect to milk farmers selling to distributors for processing and ultimate resale to the United States. The federal government, while not conceding that California can regulate producer prices, over the objection of the federal government, where the milk is to be resold to the United States, has concluded as a matter of procurement policy not to assert immunity from these minimum prices but to accede to full compliance with those requirements. Accordingly, the United States now suggests that, without further briefing or argument, the Court remand the cause to the district court for a deletion of that part of the final order enjoining enforcement of the minimum producer price regulations as to milk sold to distributors for resale to the federal government.

"The United States continues, however, to oppose any attempt by California to regulate the price at which *distributors* may sell milk or milk products to the military installations involved. In our view, the district court was clearly correct in enjoining enforcement of the minimum distributor prices because the sales between the distributors and the United

States are consummated on territories under exclusive federal jurisdiction; so far as we are aware, all of these distributor sales take place on the federal enclaves. As to this aspect of the case, we submit, therefore, that the judgment below should be summarily affirmed.''

On July 20, 1961, Allied Dairymen, Inc. (hereinafter referred to as Allied), from its office in Tulare sent a formal written offer to the Military Subsistence Supply Agency of the federal government in Los Angeles to supply milk and milk products to the government at Vandenberg Air Force Base, commencing September 1, 1961; this offer was accepted by the Military Subsistence Supply Agency a week later in Los Angeles, and Allied began performance of its sales contract on September 1, 1961. The contract provided for the delivery of milk and milk products to Vandenberg Air Force Base's commissary, dining hall No. 1, dining hall No. 2, hospital dining hall, in-flight kitchen and cold storage plant, on parcels of land acquired by the United States in about 1942 for military purposes. The air force base is located in the Ventura-Santa Barbara marketing area.

On August 31, 1961, the Director filed the complaint in this suit against Allied for a temporary restraining order, preliminary injunction and permanent injunction, alleging that Allied is a nonprofit cooperative marketing association organized for the purpose of marketing milk, cream, and other dairy products, and licensed to engage in business as a distributor thereof and seeking to restrain it from doing business in California ''. . . except in full compliance with the minimum producer price regulations promulgated by the Director of Agriculture. . . .'' Attention is called in the complaint to section 4280, subdivision (g), of the Agricultural Code, which requires that any stabilization and marketing plan shall contain provisions for prohibiting any distributor from engaging in what is specified as one of the unfair practices denounced therein, to wit:

''The payment by a distributor to any producer, including any association of producers, or the receipt by a producer, including any association of producers, from a distributor, of a lesser price for any fluid milk or fluid cream or fluid skim milk which is distributed to any person, including agencies of the federal, state or local government, located upon property within the geographical limits of any marketing area for less than the minimum prices established by the director to be paid by distributors to producers for fluid milk, or the milk

fat and skim milk contained therein, or fluid cream or fluid skim milk for said marketing area. The provisions of this section with respect to fluid milk shall apply whether or not such fluid milk is received by the distributor as whole milk, or as skim milk and fluid cream, or either, or as any other derivatives of such fluid milk which are reconstituted into such fluid milk or fluid cream or fluid skim milk for market usage, and whether or not a fluid cream plan has been established for the marketing area.''

The complaint alleges that said provision was contained in the applicable stabilization and marketing plan for fluid milk, Kings-Tulare marketing area, promulgated by the Director and initially effective September 16, 1960; that in July of 1961, the defendant submitted a formal bid accepted by the United States for the sale at the Vandenberg Air Force Base in Santa Barbara County of fluid milk in the following quantities at these specified prices:

| Quantity | Size Container | Offering Price |
|---|---|---|
| 300,000 gals. | Six gal. | .5350 per gal. |
| 480,000 ½ gal. container | ½ gal. | .2700 per ½ gal. |
| 9,000 qt. container | qt. | .1400 per qt. |
| 300,000 ½ pt. container | ½ pt. | .0430 per ½ pt. |

Paragraph IX of the complaint is as follows: ''That the prices at which defendants have offered to sell the aforementioned fluid milk are so low that, when received by defendants, will be insufficient to pay the California producers of such milk the minimum prices for such fluid milk established by the Director of Agriculture in the Stabilization And Marketing Plan For Fluid Milk Kings-Tulare Marketing Area; that defendants are financially unable to make payment of the said minimum prices from sosurces [sic] other than the proceeds of the milk sales to Vandenberg Air Force Base, and as a result, said producers will receive from defendants for their fluid milk less than the minimum prices established by the Director of Agriculture to be paid to said producers, contrary to the provisions of Section 4280(g) of the Agricultural Code and Article V, Section A, paragraph 7, of the aforementioned stabilization and marketing plan; that said milk producers will be irreparably injured since the surety bond posted by the defendant Allied Dairymen, Inc. to assure payment of producers is in the sum of $5,000.00 and because the prospective loss to said producers will run in excess of the penal sum of said bond.''

The pleading continues with the allegations that on August

22, 1961, plaintiff demanded of defendant that it make provision for the payment of minimum producers prices for milk sold to the Vandenberg Air Force Base but that defendant failed to comply; that defendant threatened to commence on September 1, 1961, to sell fluid milk pursuant to said agreement and that if this is done defendant will be unable to return to its California producers the minimum prices established by the Director of Agriculture.

Paragraphs XII, XIII and XIV of the complaint continue as follows:

"That in the near future the United States will ask licensed distributors, including defendants, to submit bids for the sale of fluid milk for delivery to other of the 280 military installations of the United States located within the geographic boundaries of other marketing areas within the State of California; that unless restrained by this Court, defendants will cause a price war between distributors competing for annual federal sales of approximately thirty million gallons of milk; that said price war will cause irreparable annual losses to California dairymen of not less than six million dollars annually.

"That if defendants Allied Dairymen, Inc. and Does One through Five, inclusive, are not restrained and enjoined from buying, handling, and selling fluid milk, and from otherwise doing business as a distributor of fluid milk within the State of California except in full compliance with the minimum producer price regulations promulgated by the Director of Agriculture pursuant to Chapter 17, Division 6, Agricultural Code, that immediate and irreparable injury will result to the California dairy industry and to the People of the State of California and will frustrate the legislative purposes and objectives of Chapter 17, Division 6, Agricultural Code.

"That this is a proper case for the issuance of an injunction under Section 4256 of the Agricultural Code."

The complaint prays for a temporary restraining order, a preliminary injunction and a permanent injunction ". . . enjoining and restraining defendants, their agents, servants, employees and all persons acting in concert and participation with them, and each of them, from purchasing, handling, and selling fluid milk within the State of California, and from otherwise doing business within the State of California, except in full compliance with the minimum producer price regulations promulgated by the Director of Agriculture pursuant to Chapter 6, Division 6, Agricultural Code," and the prayer contains the specific request in addition, as follows: "2. For

an order of this Court directing that defendants show ca[u]se, if any they have, at a time and place to be fixed by the Court, why a preliminary injunction should not issue as prayed for hereinabove." Costs of suit were also asked for and such other and further relief as might be deemed just and proper.

At the time of filing the complaint several declarations were also filed in support of the requested preliminary injunction, and on the same day the Superior Court of Tulare County issued an order to show cause requiring Allied to appear before the court on September 12, 1961, ". . . then and there [] to show cause, why it should not be restrained and enjoined during the pendency of this action from purchasing, handling, and selling fluid milk within the State of California, and from otherwise doing business within the State of California as a distributor of fluid milk, except in full compliance with the minimum producer price regulations promulgated by the Director of Agriculture. . . ."

Beginning September 14, 1961, an extensive hearing was held by the court on the application for preliminary injunction. The evidence was concluded on September 19 and the matter submitted on briefs. Under date of December 26, 1961, the judge who heard the application for the preliminary injunction notified the clerk ". . . to enter judgment in favor of the defendant, Allied Dairymen, Inc., in the complaint for an injunction in the above-entitled action. . . ." On February 20, 1962, findings of fact and conclusions of law and a judgment were filed. The judgment recites in part as follows:

"*This cause came on for hearing* before the Court sitting without a jury on September 14, and 19, 1961, *on plaintiff's motion for preliminary injunction*. . . ." (Emphasis added.)

The judgment provides: "WHEREFORE, by reason of the law and the findings of fact aforesaid, IT IS ORDERED, ADJUDGED, AND DECREED that judgment be entered dismissing the action by reason of the Court's lack of jurisdiction of the cause, and that defendant have judgment against plaintiff in the sum of ———— as costs of suit."

In the meantime the defendant had filed a demurrer to the complaint, which was overruled by another judge, and had thereafter filed an answer in which there were set up a number of separate defenses; the second affirmative defense alleged that section 4280, subdivision (g), of the Agricultural Code of California violates the equal protection clause of the 14th Amendment to the Constitution of the United States in that it discriminates against nonprofit agricultural coopera-

tives organized pursuant to chapter 17 of division 6 of the Agricultural Code of California licensed as distributors of fluid milk and in favor of other business organizations licensed as distributors of the same type of products; the third affirmative defense alleges that the same section and subsection of the Agricultural Code violates section 11, article I, of the Constitution of the State of California; the fourth affirmative defense makes the contention that the Vandenberg Air Force Base and the delivery points for milk thereon are within the exclusive legislative jurisdiction of the government of the United States and that said lands were acquired by the United States by purchase with the consent of the government of the State of California for the purpose of erection of forts, magazines, arsenals and other needful buildings and that the state has no jurisdiction over the area involved and therefore cannot control acts of citizens of California taking place thereon or acts preparatory thereto; the fifth affirmative defense maintains that the Vandenberg Air Force Base was purchased by the United States with the consent of the Legislature of the State of California for the purpose of erecting a fort, magazines, arsenals and other needful buildings and that the state has no jurisdiction over the territory involved; the sixth affirmative defense alleges the purchase of the Vandenberg Air Force Base by the United States with the consent of the Legislature of the State of California, that the base is a military installation and that the procurement of supplies therefor is governed by the Armed Forces Procurement Act of 1947, which provides for the purchase of milk by negotiated contract and further provides that when competitive bidding for supplies cannot be obtained that the procurement officer shall have the right to secure such supplies by negotiated contract and that division 6 of the Agricultural Code and section 4280, subdivision (g), of the same code, if enforced, would effectively stop competitive bidding; the seventh affirmative defense sets up the alleged fact that the plaintiff has consistently endeavored to enforce the provisions of division 6 of the Agricultural Code against only one class of distributors, namely, agricultural cooperatives, of which class the defendant is a member, that the means of enforcement is the filing of various law suits against agricultural cooperatives and the bringing of a multiplicity of actions against them, that during that time other distributors have engaged in the same conduct as agricultural cooperatives, that the plaintiff has known thereof and that the alleged discrimination against the co-

operatives is in violation of the 14th Amendment to the Constitution of the United States; the eighth affirmative defense alleges that the claimed discrimination against defendant and other agricultural cooperatives and in favor of other classes of distributors violates article I, section 11, of the Constitution of the State of California.

The h'earing before the trial court was solely on an application for a preliminary injunction; it was not a motion for judgment on the pleadings (in fact, the only existent pleading at the time of the hearing was the complaint), nor a motion for summary judgment, and there is no stipulation in the record that the merits of the case should be determined on the evidence received on this preliminary hearing; instead of ruling on the motion for a preliminary injunction, the court took the matter in its own hands and dismissed the suit on a theory of lack of jurisdiction.

It is elementary that the ultimate rights of the parties are not determined in connection with an application for preliminary injunction. In *French Art Cleaners* v. *State Board etc. Cleaners,* 91 Cal.App.2d 890, 897 [206 P.2d 25], it is said:

"The effect of a preliminary injunction is explained in 14 California Jurisprudence, pages 184-185 as follows: 'The granting or denial of a preliminary injunction does not amount to an adjudication of the ultimate rights in controversy. It merely determines that the court, balancing the respective equities of the parties, concludes that, pending a trial on the merits, the defendant should or should not be restrained from exercising the rights claimed by him. Indeed, when the cause is finally tried it may be found that the facts require a decision against the party prevailing on the preliminary application. *It therefore follows that an appellate court in passing upon the propriety of the issuance or dissolution of a preliminary injunction will not determine the merits of the case in advance of the trial,* and its decision as to the propriety of granting the writ is no intimation of what the judgment of the lower court should be at the final hearing; nor is it the law of the case in a subsequent appeal from the final judgment on the merits.' (Emphasis added.)" (See also *O'Shea* v. *Tile Layers Union,* 155 Cal.App.2d 373, 378 [318 P.2d 102]; *Froomer* v. *Drollinger,* 183 Cal.App.2d 787, 789 [7 Cal.Rptr. 268].)

The general rule with respect to a decision on the merits in connection with an application for preliminary

injunction is thus stated in 43 Corpus Juris Secundum, Injunctions, section 213, page 946: ''Unless defendant defaults in pleading, it is improper to render a final decree granting a perpetual injunction on the basis of the evidence produced on the hearing of an application for a preliminary injunction.'' (Citing *Ruiz* v. *Alfonso* (La.App.) 1 So.2d 330.)

In the case of *Anderson* v. *Joseph,* 146 Cal.App.2d 450, 454 [303 P.2d 1053], the rule controlling such procedure is laid down in all stringency as follows: ''In any event, unless based upon stipulation or other satisfactory showings submitting the cause on the merits, *the court was without jurisdiction to determine the merits upon the hearing of a motion for a temporary injunction and the orders purporting to do so are void.*'' (Emphasis added.) (See also 27 Cal.Jur.2d, Injunctions, § 10, pp. 114-115, as amended in 1962 Cum.Supp., p. 17, referring to p. 115, line 6 of the text.)

The general rule with respect to jurisdiction stated in 49 Corpus Juris Secundum at section 19(d) on pages 49 and 50 is as follows: ''It is necessary to the validity of a judgment that the court should have jurisdiction of the question which its judgment assumes to decide, and jurisdiction to render a judgment for the particular remedy or relief which the judgment undertakes to grant.

''In addition to jurisdiction of the parties and the subject matter, it is necessary to the validity of a judgment that the court should have jurisdiction of the question which its judgment assumes to decide, and jurisdiction to render a judgment for the particular remedy or relief which the judgment undertakes to grant. Where the court does not have such jurisdiction, the judgment is void.''

In *Hunter* v. *Superior Court,* 36 Cal.App.2d 100, 112 [97 P.2d 492], it is said: ''Nullity of judgments results from a want of legally organized court or tribunal; want of jurisdiction over the subject-matter or the parties; *or want of power to grant the relief contained in the judgment.* [Citing authorities.]'' (Emphasis added.) (See also *Jellen* v. *O'Brien,* 89 Cal.App. 505 [264 P. 1115]; *Michel* v. *Williams,* 13 Cal. App.2d 198 [56 P.2d 546]; *Grannis* v. *Superior Court,* 146 Cal. 245 [79 P. 891]; *Ritchie* v. *Sayers,* 100 F. 520, 532.)

Here the court lacked power or authority to grant a judgment on the merits in a proceeding which was devised and conducted for the sole purpose of passing on the question whether during the pendency of the action and until a deter-

mination on the merits a preliminary injunction should issue to preserve the status quo.

It is no answer to the foregoing observation that if the trial court had in fact made an order on the application for preliminary injunction denying such injunction on the sole ground that the state statute was unconstitutional an appeal could have been taken from such order, and in such circumstances the court could have determined on appeal whether or not the preliminary injunction was properly denied on that basis and, incidentally, whether the statute in question was in fact unconstitutional. (*Youngstown Sheet & Tube Co.* v. *Sawyer,* 343 U.S. 579, 584-585 [72 S.Ct. 863, 96 L.Ed. 1153, 26 A.L.R.2d 1378] ; *Bomberger* v. *McKelvey,* 35 Cal.2d 607, 612-613 [220 P.2d 729].) The trial judge made no order in this case on the application for preliminary injunction. Instead, he took a shortcut to an ultimate determination of the litigation when that question was not before the court and when it had no jurisdiction, properly speaking, so to act. Under our legal system we have time-honored methods of procedure that cannot be bypassed or disregarded.

It is equally clear that the trial judge had no right to dismiss the case on any statutory ground (Code Civ. Proc., §§ 581, 581b) or because the complaint was "false, fictitious and sham" (*Lincoln* v. *Didak,* 162 Cal.App.2d 625 [328 P.2d 498] ; *Cunha* v. *Anglo California Nat. Bank,* 34 Cal.App.2d 383, 388 [93 P.2d 572] ; *Crowley* v. *Modern Faucet Mfg. Co.,* 44 Cal.2d 321, 324 [282 P.2d 33] ; *Utz* v. *Aureguy,* 109 Cal. App.2d 803, 806 [241 P.2d 639] ; *Neal* v. *Bank of America,* 93 Cal.App.2d 678, 682 [209 P.2d 825] ; *McKenna* v. *Elliott & Horne Co.,* 118 Cal.App.2d 551, 555 [258 P.2d 528] ; *Helvey* v. *Security-First Nat. Bank,* 99 Cal.App.2d 149, 151 [221 P.2d 257]). Even if there had been a motion to dismiss, there was no ground mentioned in sections 581 and 581b of the Code of Civil Procedure that would authorize such action, and most certainly it could not be contended that the complaint is false, fictitious or sham or that it constitutes an abuse of the process of the court.

The trial court's belief that it had no jurisdiction of the case was erroneous. It does not follow, even if a state statute is unconstitutional, that the state court has no jurisdiction to hear and determine a suit in which the statute is invoked. An important act of the Legislature of the State of California is here involved as well as the entire administrative machinery set up by law to implement and enforce it.

The complaint itself, while centering upon the question of the effect of a pending contract for the sale of milk to the United States, is wider in scope than its application to the single contract, and there are questions other than the federal question involved in the litigation. While the United States Supreme Court has the final right to determine whether any specific state law violates the Constitution of the United States (11 Cal.Jur.2d, Constitutional Law, § 66, p. 391), it is equally true that the construction of a state statute is a question to be determined conclusively by the Supreme Court of California. (11 Cal.Jur.2d, Constitutional Law, § 67, p. 392.)

Without question, the state court is a proper forum for this litigation. If one of the special defenses set forth in the answer, namely, that the statute is unenforceable because it conflicts with the Constitution of the United States is sustained, then the specific relief prayed for against the federal government will not be available. But if that defense should be upheld and there is a denial in whole or in part of any remedy, this does not mean that the court lacks jurisdiction to try and determine the issues on the merits.

Furthermore, even if the statute in question is unconstitutional as to the federal government, it would not follow that it must otherwise fail.

 ''Statutes may be unconstitutional and void as to their application to a part of their subject matter and valid as to other parts, or, to state the problem more concretely, they may be constitutional in operation with respect to some persons and states of fact and unconstitutional as to others.'' (11 Am.Jur., Constitutional Law, § 163, p. 857.)

''Another class of cases in which a statute may be in part valid and in part invalid consists of laws enacted by a legislature in general terms, covering not only persons and property as to which the legislature clearly has the right to make regulations, but apparently applying also to individuals and property protected from such legislation. A law may be unconstitutional and void, in relation to particular cases, and yet valid to all intents and purposes in its application to other cases which differ from the former in material characteristics. In other words, where a statute has been passed by the legislature and, in relation to certain cases which it affects, some part of it is not within the competency of the legislative power or is repugnant to some provision of the Constitution, such part may be adjudged void and of no avail, while all other parts of the act not obnoxious to the same objection may

be upheld as valid and have the force of law.'' (11 Am.Jur., Constitutional Law, § 164, pp. 858-859.)

If the Supreme Court of the United States should affirm the judgment of the district court in the case of *United States* v. *Warne, supra,* 190 F.Supp. 645, it would be the duty of the state court to hold that sales to the federal government by the defendant can not be controlled by the state law. If the United States Supreme Court reverses or modifies the judgment of the district court, the effect of such ruling would have an obviously important bearing on the ruling on the merits in the instant case. We resist the temptation to expatiate upon the constitutional questions involved as unnecessary to a decision herein.

The judgment of dismissal is reversed with directions to the trial court to make a ruling on plaintiff's application for a temporary injunction in due course.

Brown, J., concurred.

Stone, J., being disqualified, did not participate.