63 Cal.2d 222 (1965)
FRANKLIN LIFE INSURANCE COMPANY, Plaintiff and Appellant,
v.
STATE BOARD OF EQUALIZATION, Defendant and Respondent.
S. F. No. 21577. 
Supreme Court of California. In Bank. 
Aug. 19, 1965.
 McCutchen, Doyle, Brown, Trautman & Enersen, John N. Hauser and Frederick H. Stone for Plaintiff and Appellant.
 Bert W. Levit, Victor B. Levit and Long & Levit as Amici Curiae on behalf of Plaintiff and Appellant. *224
 Stanley Mosk and Thomas C. Lynch, Attorneys General, Dan Kaufmann and Harold B. Haas, Assistant Attorneys General, for Defendant and Respondent.
 TOBRINER, J.
 Asserting the unconstitutionality of the retaliatory tax statute (Ins. Code, 685) or, in the alternative, its unconstitutional application in the instant case, plaintiff Franklin Life Insurance Company (hereinafter called the Company) sought unsuccessfully in the trial court to recover taxes assessed by defendant State Board of Equalization (hereinafter called the Board). More specifically, the Company contends: (1) the retaliatory tax statute conflicts with the constitutional provision authorizing the retaliatory tax; (2) the Board improperly computed the retaliatory tax imposed upon the Company; and (3) the Board's application of the tax denies the Company equal protection of the laws. For the reasons explained below we conclude that none of these arguments may prevail.
 Subdivisions (a)-(d), section 14 4/5, article XIII of the California Constitution provide that insurance companies doing business in California are to be annually taxed at the rate of 2.35 per cent of the "amount of gross premiums, less return premiums, received in such year by such insurer upon its business done in this State, other than premiums received for reinsurance and for ocean marine insurance." (Subd. (c).) This gross premium tax "is in lieu of all other taxes" such as personal property taxes and most other property and license taxes. (Cal. Const., art. XIII, 14 4/5, subd. (f).) Although the gross premium tax is not levied in lieu of real property taxes, the insurance company may deduct from the gross premium tax the amount of real property taxes paid on its principal or home office in California. (Subd. (e).)
 The Constitution specifically provides that the gross premium tax is not in lieu of the retaliatory tax. Article XIII, section 14 4/5, subdivision (f)(3) of the California Constitution, prior to the recent amendment, [fn. 1] states, "When by the laws of any other state or country any taxes, fines, penalties, licenses, fees, deposits of money or securities or other obligations or prohibitions are imposed on insurers of this State *225 doing business in such other state or country, or upon their agents therein, in excess of those imposed upon insurers of such other state or country or upon their agents therein, so long as such laws continue in force, the same obligations and prohibitions of whatsoever kind may be imposed by the Legislature upon insurers of such other state or country doing business in this State, or upon their agents herein."
 Ostensibly acting under the constitutional authorization, the Legislature in 1959 enacted Insurance Code sections 685 to 685.3 [fn. 2] which impose retaliatory taxes upon foreign insurers whenever their home states impose taxes on similar California insurers higher than California assesses those states' insurers. [fn. 3]
 In 1960 the Company, an Illinois corporation licensed to do business in California, filed a tax return and a retaliatory tax statement which showed that its aggregate California taxes, licenses and fees for 1959 totaled $191,223.25. This figure represents the sum total of the premium taxes ($121,833.72), real estate taxes ($69,354.53), fee for filing the annual statement of financial condition ($25), and fee for *226 the renewal of the certificate of authority ($10). The Company also declared in the statement that Illinois would impose insurance taxes, licenses and fees in the aggregate amount of $176,173.41 upon a California insurer transacting the same amount of business in Illinois as the Company transacted in California, but would impose taxes and fees in the aggregate amount of $107,942.29 upon a domestic insurer transacting the same quantity of business in Illinois.
 The Board assessed the Company retaliatory taxes in the amount of $54,304.69, which represented the difference between the hypothetical Illinois tax upon a California insurer ($176,173.41) and the Company's aggregate California taxes, licenses and fees, after subtracting the real estate taxes on its principal office in California ($121,868.72). The Board subtracted the real estate tax on the principal office, since, pursuant to article XIII, section 14 4/5, subdivision (e) of the California Constitution, the Company had deducted this real estate tax from the tax on gross premiums.
 After a hearing, the Board denied the plaintiff's application to reduce the retaliatory tax to zero. On October 14, 1960, the Company paid to the State of California under protest the retaliatory tax of $54,304.69, plus interest from June 15, 1960. The Company then commenced the instant action to recover the taxes paid under protest.
 [1] The Company first contends that the retaliatory tax statute (Ins. Code, 685-685.3) directly conflicts with article XIII, section 14 4/5, subdivision (f)(3) of the California Constitution and therefore fails entirely as a constitutional measure. As we have noted, the Constitution provides that the gross premium tax shall be in lieu of all other taxes except certain specified taxes, one of which is a tax on foreign insurers of states discriminating against California insurers. (Cal. Const., art. XIII, 14 4/5, subd. (f).) Consequently, the Company argues, the Legislature is only authorized to enact that type of retaliatory tax legislation which is specified by the Constitution.
 We recognize that the retaliatory tax statute appears to impose a tax upon the foreign insurer without regard to whether the foreign state discriminates against California insurance companies. Of course, any attempt to assess a retaliatory tax against an insurer from a state which did not discriminate against California insurers would constitutionally fail. *227
 The Company, however, may not escape liability because of any conflict in the literal terms of the Insurance Code and the Constitution. The Company's home state, Illinois, not only imposed a higher tax on California insurers than California assessed the Company, but it also discriminated against California insurers. Thus, although the terms of the Constitution and the statute may vary in the abstract, no conflict between the Constitution and the statute arises as to the facts of this case. The Constitution permits and the statute requires that plaintiff be taxed.
 [2] The possibility of hypothesizing an unconstitutional application of the statute does not save the Company from its actual constitutional operation in the instant case. The valid employment of the statute in the present situation does not fail because the statute might be improperly invoked in other situations. As this court stated in sustaining the validity of the California Fair Trade Act (Bus. & Prof. Code, 16900-16905), "Respondent presents several hypothetical situations under which enforcement of the act would be inequitable or difficult, or perhaps, even unconstitutional. It is elementary, of course, that a statute may be invalid as applied to one set of facts, yet valid as applied to another. (Dahnke-Walker Milling Co. v. Bondurant, 257 U.S. 282 [42 S.Ct. 106, 66 L.Ed. 239].) The situations conjured up by respondent are not here involved, and respondent is limited in his attack to the application of the statute to the factual situation now before the court." (Max Factor & Co. v. Kunsman (1936) 5 Cal.2d 446, 468 [55 P.2d 177]; see also In re Cregler (1961) 56 Cal.2d 308, 313 [14 Cal.Rptr. 289, 363 P.2d 305]; People v. Perry (1931) 212 Cal. 186, 193 [298 P. 19, 76 A.L.R. 1331]; Paul v. Allied Dairymen, Inc. (1962) 209 Cal.App.2d 112, 124 [25 Cal.Rptr. 595]; People v. Naumcheff (1952) 114 Cal.App.2d 278, 280 [250 P.2d 8]; 2 Sutherland, Statutory Construction (3d ed. 1943) 2413-2415; Stern, Separability and Separability Clauses in the Supreme Court (1937) 51 Harv.L.Rev. 76, 82-106.
 [3] Although this court, in certain circumstances, will hold a statute unconstitutional on its face without regard to the particular facts of the case, such circumstances are not involved here. Thus when the application of the statute is invalid in certain situations we cannot enforce it in other situations if such enforcement entails the danger of an uncertain or vague future application of the statute (see, e.g., *228 In re Blaney (1947) 30 Cal.2d 643, 653-656 [184 P.2d 892]; Seaboard Acceptance Corp. v. Shay (1931) 214 Cal. 361, 368 [5 P.2d 882]). We have been particularly aware of fomenting such danger of uncertainty in the application of a statute which would inhibit the exercise of a constitutional right (In re Blaney, supra) or impose criminal liability (People v. Stevenson (1962) 58 Cal.2d 794 [26 Cal.Rptr. 297, 376 P.2d 297]). As the United States Supreme Court has said in rejecting an argument that a statute violative of the Fifth Amendment could be constitutionally applied to the case before it, such a "course would not be proper, or desirable, in dealing with a section which so severely curtails personal liberty." (Aptheker v. Secretary of State (1964) 378 U.S. 500, 516 [84 S.Ct. 1659, 12 L.Ed.2d 992]; see National Assn. for Advancement of Colored People v. Button (1963) 371 U.S. 415 [83 S.Ct. 328, 9 L.Ed.2d 405]; Thornhill v. Alabama (1940) 310 U.S. 88 [60 S.Ct. 736, 84 L.Ed. 1093].)
 We face no such problem of uncertainty in the future application of the tax statute which is involved in the instant case. Its application within a constitutional ambit presents no possibility of the inhibition of constitutional rights or risk of criminal sanction.
 [4] Another situation in which we might hold a statute unconstitutional on its face involves the statute which, when held to be partially operative and partially inoperative, disrupts the overall legislative intent. In such a case, if the severed statute does not in all likelihood conform to the legislative design, we would invalidate all of it rather than leave in force an unintended fragment. (See County of Los Angeles v. Jessup (1938) 11 Cal.2d 273, 279 [78 P.2d 1131]; City of Los Angeles v. Lewis (1917) 175 Cal. 777, 783 [167 P. 390].)
 The Legislature here indicated its desire that the statute apply to the full permissible constitutional extent by providing, "To the extent permitted by the Constitution of this State there is hereby imposed upon the Commissioner the duty of enforcing the execution of the provisions of Section 685." (Italics added.) (Ins. Code, 685.3.) Although, as the Company points out, the Insurance Commissioner does not exercise the function of interpreting the statute, a task performed by the Board of Equalization (Cal. Const., art. XIII, 14 4/5, subd. (h)), other sections of the code designate the commissioner as the officer who is to enforce the insurance *229 laws and to collect taxes imposed by the Insurance Code. (Ins. Code, 12921, 12976.)
 The provision that the statute shall be enforced to the extent permitted by the Constitution "must be given a meaning that will make of it something more than only an unnecessary and tautological addition to the act." (Golden Gate Scenic Steamship Lines, Inc. v. Public Utilities Com. (1962) 57 Cal.2d 373, 377 [19 Cal.Rptr. 657, 369 P.2d 257].) The only purpose of the Legislature in enacting this provision could have been to limit the enforcement of the statute "to the extent permitted by the Constitution." Clearly the clause cannot be read as merely limiting the duties of the Insurance Commissioner to those specified by the Constitution since the Constitution omits any mention of the Insurance Commissioner, who is a statutory officer and whose duties are therefore covered entirely by statute.
 If a tax statute can stand only if restricted to a constitutional dimension, then we must surely give heed to a legislative direction that it be enforced only to the extent permitted by the Constitution. (See Owens v. Superior Court (1959) 52 Cal.2d 822, 832 [345 P.2d 921, 78 A.L.R.2d 388]; cf. Hamer v. Town of Ross (1963) 59 Cal.2d 776, 789 [31 Cal.Rptr. 335, 382 P.2d 375].) Moreover, we may reasonably assume that the Legislature would prefer that the state collect some tax monies rather than none at all. [fn. 4]
 Language in City of Los Angeles v. Lewis, supra, 175 Cal. 777, relied upon by the Company and incorporated in other decisions cited by the Company, does not apply to the situation before us. In Lewis the plaintiff city sued the County of Los Angeles auditor to compel him to pay rent due under a lease entered into between the city and the county. Under the lease the county acquired the use of a cement plant. The county purported to act under Political Code, section 4041, *230 subdivision 9a, which permitted the county to operate a cement plant. The court held that the county could not operate the plant for private purposes. Although the court used broad language to the effect that the statute was unconstitutional on its face, the court explained that the lease involved in the case contemplated private use of the cement plant. Thus the case presented an actual conflict between application of the statute in that case and the Constitution, a situation wholly different from the instant one.
 The Lewis language warns against the judicial rewriting of statutes or intrusion by courts into the affairs of the Legislature. In that case, the court said that to restrict the sale of cement to only public consumers would be "to destroy the law itself and to frame a law distinctly the contrary of that which the legislature deliberately and advisedly formulated and passed." (City of Los Angeles v. Lewis, supra, 175 Cal. 777, at p. 783.) But here we preserve within the constitutional framework the proper purpose of the Legislature. When we hold that the Company in the instant case must demonstrate a true conflict between the Constitution and the application of the statute, and when our application of the statute does not conflict with the overall purposes of the statute, we do not interfere with the legislative sphere. (Cf. City of Los Angeles v. Riley (1936) 6 Cal.2d 625, 628 [59 P.2d 139, 106 A.L.R. 903].)
 In conclusion, if the Board sought here to assess a retaliatory tax against an insurer from a state which did not discriminate against California insurers, we could not sustain such an extended sweep of the statute. But the tax before us actually does rest upon a factual situation of the foreign state's discrimination; the statute may then be properly applied. Such valid restricted coverage does not entail a danger that the future use of the statute will become enveloped in a fog of uncertainty; nor will such limited coverage violate the overall legislative design.
 Amici curiae have persuasively posited the invalidity of the tax upon the point that this was a different type of statute than that contemplated by the Constitution, in that it is a "comparative" rather than a "discriminatory" tax enactment. We nevertheless believe our task is to find whether an actual conflict arises between the application of the tax and the constitutional provision rather than to test the nature or the nomenclature of the enactment. *231
 [5] The Company secondly contends that the Board unconstitutionally and erroneously subtracted the real estate tax on its principal place of business from its California gross premium tax in computing the retaliatory tax.
 In determining the retaliatory tax the Board compared the amount of tax which Illinois would impose on a California insurer doing the same amount of business as plaintiff ($176,173.41) with the tax on plaintiff's gross receipts ($191,223.25) less the deduction for real estate taxes paid on the Company's principal place of business ($69,354.53). The Company contends that the real estate taxes must be included as part of the California tax for purposes of the comparison; if so, it would not be liable for any retaliatory tax.
 Section 685.1 of the Insurance Code provides that the retaliatory tax statute "shall not apply as to" certain taxes on real property "except that deductions, from premium taxes or other taxes otherwise payable, allowed on account of real estate or personal property taxes paid shall be taken into consideration in determining the propriety and extent of retaliatory action under this article." As we shall explain, the Board correctly and constitutionally applied the statute by taking the deduction into consideration in arriving at the California tax for purposes of comparison with the Illinois tax.
 We read article XIII, section 14 4/5, subdivision (f)(3), as referring to taxes on the privilege of engaging in the insurance business and not as related to a property tax. (Cf. Consolidated Title Security Co. v. Hopkins (1934) 1 Cal.2d 414 [35 P.2d 320]; Carpenter v. People's Mutual Life Ins. Co. (1937) 10 Cal.2d 299 [74 P.2d 508]; 3 Witkin, Summary of Cal. Law (1960) 2246.) Moreover, subdivision (b) of the same section imposes the annual tax on insurers "at the rates, and subject to the deductions from the tax hereinafter specified." Thus the California tax to be compared with the Illinois tax for purposes of the retaliatory tax must be computed "subject to the deduction" specified in subdivision (e).
 We believe the position of the Company presents an inherent anomaly. It argues that, even though the real estate tax is deducted from the premium tax, nevertheless the real estate tax must be included in the retaliatory computation because it is "part of the California tax burden on that *232 insurance company." If we accept this premise, however, we must likewise include in the Illinois burden the proper amount of real estate taxes upon a similar building in Illinois. Since the Board, in computing the total Illinois tax on California insurers, did not take into consideration any Illinois tax on property of a California insurer doing business in Illinois, [fn. 5] the Board did not reach an unreasonable conclusion in refusing to credit the Company with the California property tax on its principal office in determining the amount of taxes paid for purposes of the retaliatory tax provision.
 Although we recognize that the failure to include the real property tax on a foreign insurer's principal office in the measure of California tax liability may, in some instances, render nugatory the deduction provided by article XIII, section 14 4/5, subdivision (e) of the California Constitution, this result would not follow if Illinois did not discriminate against California insurers or if the total Illinois insurance tax on California insurers were less than the total California insurance tax on Illinois insurers; hence the Board's application of the statute does not necessarily entail the abrogation of the deduction provided by the Constitution. The Board merely considers the deduction in computing a figure which may trigger the retaliatory tax.
 [6] The Company finally contends that the statute, as applied by defendant, so operates as to place a retaliatory tax upon a few of the smaller Illinois insurance companies doing business in California, while not imposing such a tax on the other Illinois insurers doing business in California. The Company points out that California does not assess a retaliatory tax against the larger insurance companies doing business in this state because the 2.35 per cent gross premium tax which it imposes on them, even after deducting the real estate tax paid on the principal office, exceeds the comparable Illinois 2 per cent gross premium tax on a California insurer doing a similar amount of business in Illinois. As a consequence, the Company argues, the tax operates only on a small group of insurance companies because of an arbitrary ratio of real estate holdings to gross premiums. The Company argues that it thereby suffers a deprivation of the equal protection of the laws.
 The United States Supreme Court, however, has long recognized *233 the elementary principle that a distinction in tax statutes between parties does not violate the equal protection clause if such distinction rests upon a rational basis. That court has said, "Neither due process nor equal protection imposes upon a state any rigid rule of the equality of taxation. ... A legislature is not bound to tax every member of a class or none. It may make distinctions of degree having a rational basis, and when subjected to judicial scrutiny they must be presumed to rest on that basis if there is any conceivable state of facts which would support it." (Carmichael v. Southern Coal Co. (1937) 301 U.S. 495, 509 [57 S.Ct. 868, 81 L.Ed. 1245, 109 A.L.R. 1327]; see 3 Witkin, Summary of Cal. Law (1960) 2129-2135.)
 The California Constitution and the retaliatory tax statute contemplate retaliation only in the event that the home state of the insurer discriminates against a California insurer doing business in Illinois and taxes that California insurer more than California taxes an Illinois insurer doing a similar amount of business. These conditions are met in the instant case, although they are not fulfilled in the situations of the larger Illinois insurers. California may reasonably retaliate against small companies from Illinois, or companies from Illinois with a high real property-gross premium ratio, and not against its larger ones if the home state of those insurance companies, in addition to discriminating against California insurers, taxes only such smaller California insurers more than California taxes such smaller insurers.
 Furthermore, the statute does not by its terms discriminate as to the size of the insurer. Nor does any discrimination follow as a matter of necessity from the terms of the statute. Any possible discrimination in operation is attributable to the Company's investment decision with regard to its principal place of business.
 The judgment is affirmed.
 Traynor, C. J., Peters, J., Peek, J., Burke, J., and Schauer, J., [fn. *] concurred.
 McCOMB, J.
 I dissent.
 I would reverse the judgment for the reasons expressed by Mr. Presiding Justice Shoemaker in the opinion prepared by him for the District Court of Appeal *234 in Franklin Life Ins. Co. v. State Board of Equalization (Cal.App.) 40 Cal.Rptr. 773.
NOTES
[fn. 1] 1. We discuss this case in terms of the California Constitution as it existed prior to a 1964 amendment which eliminated the requirement that the home state of the insurance company discriminate against California insurers.
[fn. 2] 2. The retaliatory tax statute cannot be challenged on the ground that it violates the commerce clause of the United States Constitution. (Art. I, 8, cl. 3.) The United States Supreme Court has held that the states have the power to impose discriminatory taxes on insurers of foreign states because Congress, in the McCarran Act (15 U.S.C. 1011-1015) consented to such state regulation of insurance. (Prudential Insurance Company v. Benjamin (1946) 328 U.S. 408 [66 S.Ct. 1142, 90 L.Ed. 1342, 164 A.L.R. 476].)
[fn. 3] 3. "When by or pursuant to the laws of any other state or foreign country any taxes, licenses and other fees, in the aggregate, and any fines, penalties, deposit requirements or other material obligations, prohibitions or restrictions are or would be imposed upon California insurers, or upon the agents or representatives of such insurers, which are in excess of such taxes, licenses and other fees, in the aggregate, or which are in excess of the fines, penalties, deposit requirements or other obligations, prohibitions, or restrictions directly imposed upon similar insurers, or upon the agents or representatives of such insurers, of such other state or country under the statutes of this State, so long as such laws of such other state or country continue in force or are so applied, the same taxes, licenses and other fees, in the aggregate, or fines, penalties or deposit requirements or other material obligations, prohibitions, or restrictions, of whatever kind shall be imposed upon the insurers, or upon the agents or representatives of such insurers, of such other state or country doing business or seeking to do business in California. Any tax, license or other fee or other obligation imposed by any city, county, or other political subdivision or agency of such other state or country on California insurers or their agents or representatives shall be deemed to be imposed by such state or country within the meaning of this article." (Ins. Code, 685.)
[fn. 4] 4. Shortly after the passage of the act, the Attorney General in an opinion said that "to the extent that the recently enacted Insurance Code sections provide for exaction of retaliatory charges in cases where the constitutional authorization to the Legislature is not applicable, the Insurance Code sections are inoperable, but only to that extent. ... Under these circumstances, we take the view that the court would permit the sections to operate but within the scope outlined by the constitutional provision authorizing the Legislature to prescribe retaliation, that is, its operation would be limited to those cases in which the specified discriminations existed in the home state of the foreign insurer subject to retaliation (Bankers Life Co. v. Richardson (1923) 192 Cal. 113 [218 P. 586])." (35 Ops.Cal.Atty.Gen. 182, 185 (1960).)
[fn. 5] 5. See Ill. Rev. Stat. (1961) ch. 120, 499; ch. 73, &Par; 1021, 1027; Pacific Mutual Life Ins. Co. v. Gerber (1961) 22 Ill.2d 196 [174 N.E.2d 862].
[fn. *] *. Retired Associate Justice of the Supreme Court sitting under assignment by the Chairman of the Judicial Council.