(No. 36159.

PACIFIC MUTUAL LIFE INSURANCE COMPANY, Appellant, *vs.* JOSEPH S. GERBER, Director of Insurance, *et al.,* Appellees.

*Opinion filed May 19, 1961.*

TAYLOR, MILLER, BUSCH & MAGNER, of Chicago, and GILLESPIE, BURKE & GILLESPIE, of Springfield, (CHARLES R. SPROWL, and FREDERICK H. STONE, of counsel,) for appellant.

WILLIAM G. CLARK, Attorney General, of Springfield, (WILLIAM C. WINES, RAYMOND S. SARNOW, and A. ZOLA GROVES, of counsel,) for appellees.

Mr. JUSTICE DAILY delivered the opinion of the court:

This appeal, involving the revenue, is prosecuted by plaintiff, Pacific Mutual Insurance Company, from a decree of the circuit court of Sangamon County dismissing its suit for the return of $783.53, claimed as a credit due from the retaliatory tax assessed against it by the State of Illinois on March 28, 1959.

Plaintiff is a California corporation which for many years has qualified to do business in Illinois as an insurance company. Being a foreign company, plaintiff, as a condition precedent to the annual renewal of its certificate of authority, is required to pay a privilege tax as provided in sections 409 and 444 of the Illinois Insurance Code. (Ill. Rev. Stat. 1957, chap. 73, pars. 1021, 1056.) Section 409 directs that every foreign insurance company (except fraternal benefit societies) shall pay "an annual State tax" for the privilege of doing an insurance business in this State, the amount of which shall be "equal to two per centum of the gross amount of premiums on direct business received during the preceding calendar year on contracts covering risks within this State * * *." Certain deductions not material here are allowed. Section 444 then provides: "Whenever the existing or future laws of any other state or country shall require of companies incorporated or organized under the laws of this State *as a condition precedent to their doing business in such other state or country,* compliance with laws, rules, regulations and prohibitions more onerous or

burdensome than the rules and regulations imposed by this State on foreign or alien companies, or shall require any deposit of securities or other obligations in such state or country, for the protection of policyholders or otherwise or require of such companies or agents thereof or brokers the payment of penalties, fees, charges or taxes greater than the penalties, fees, charges or taxes *required in the aggregate for like purposes by this Code or any other law of this State, of foreign or alien companies,* agents thereof or brokers, then such laws, rules, regulations and prohibitions of said other state or country shall apply to companies incorporated or organized under the laws of such state or country doing business in this State, and all such companies, agents thereof, or brokers doing business in this State, shall be required to make deposits, pay penalties, fees, charges and taxes, in amounts equal to those *required in the aggregate for like purposes of Illinois companies doing business* in such state or country, agents thereof or brokers. * * *" (Emphasis supplied.)

It is undisputed that section 14⅘ of article XIII of the California constitution imposes an annual privilege tax on each insurance company doing business in California at a rate of 2.35 per cent of gross premiums collected, also subject to certain deductions not germane to the issues here. A further proviso of the California constitution is that the tax imposed by the section is "in lieu of all other taxes and licenses, state, county and municipal, upon such insurers and their property," except taxes on their real estate. By way of contrast, section 415 of our Insurance Code provides: "The taxes provided for by this article shall be in lieu of all license fees or privilege or occupation taxes levied or assessed by any municipality, county or other political subdivision of this State, and no municipality, county or other political subdivision of this State shall impose any license fee or privilege or occupation tax upon any foreign or alien company, or upon any of its agents, for the privilege

of doing an insurance business therein, except the tax authorized by 'An Act to enable cities, towns and villages organized under any general or special law, to levy and collect a tax or license fee from foreign fire insurance companies for the benefit of organized fire departments,' filed May 31, 1895. This section shall not be construed to prohibit the levy and collection of (a) state, county or municipal taxes upon the real and personal property of such company including the tax imposed by Sec. 414 of this Code, and (b) taxes for the purpose of maintaining the office of the Fire Marshal of this State and paying the expenses incident thereto." Ill. Rev. Stat. 1957, chap. 73, par. 1027.

Computed at the rate of two per cent of plaintiff's gross direct premiums received in Illinois during 1958, defendant, the Director of Insurance, assessed against plaintiff a net privilege tax of $73,600.36 for the fiscal year beginning July 1, 1959. There is no dispute as to this amount. Added to this figure, making a total privilege tax of $84,799.66, was a retaliatory tax of $11,199.30, which the director arrived at by calculating $74,695.36 to be the amount of fees and privilege tax due from plaintiff under the Illinois Insurance Code, and $84,894.66 as being the amount an Illinois company would have had to pay in California for similar fees and taxes.

During the year 1958, plaintiff had paid personal property taxes in two Illinois counties in the aggregate amount of $783.53, and, in due time, claimed from the Director a credit in that amount against the total retaliatory tax assessed against it. This claim was denied, whereupon plaintiff paid the assessment in full, but filed a written protest as to $783.53. Thereafter, the circuit court of Sangamon County dismissed plaintiff's suit to recover that amount, and this appeal has followed.

To support its claim for a refund, plaintiff contends, first that the express language of section 444 requires that the retaliatory tax assessed against it be reduced by the amount

of Illinois personal property taxes it pays and, second, that the object of section 444 is comity and that it is a reciprocal measure with a purpose of equalizing the aggregate burden of *all taxes* imposed upon domestic and foreign insurance companies. Neither contention may stand in face of the clear legislative intent to the contrary manifested in the plain language of section 444.

As the essential basis for its position, plaintiff interprets section 444 as providing that the Illinois taxes applicable to it, and those to be aggregated and compared with the taxes applicable to an Illinois company doing business in California, are not just those taxes, fees and charges imposed by the Illinois Insurance Code, but those imposed by any other law of this State. To arrive at this construction, plaintiff paraphrases section 444 to read: " 'Whenever the existing or future laws' of California require an Illinois insurance company doing business there to pay 'penalties, fees, charges or taxes greater than the penalties, fees, charges or taxes required *in the aggregate* for like purposes by this Code *or any other law of this State*' of a California company doing business in Illinois, then the California company must pay penalties, fees, charges and taxes equal to those required in the aggregate for like purposes of Illinois companies doing business in California." (Quotation and emphasis are the plaintiff's.)

But plaintiff's construction and paraphrasing of the section omits the vital and controlling language which shows the true intent of the legislature and the real scope and purpose of section 444. The prefatory legislative reference to "the existing or future laws of any other state or country" is immediately limited to laws with which compliance of Illinois companies is required "as a condition precedent to their doing business in such other state or country," while the reference to taxes required "for like purposes by this Code or any other law of this State," is immediately limited to the taxes required "of foreign or alien companies." The

latter provision is limited to foreign or alien insurance companies and appertains to taxes imposed on foreign or alien companies as such. Thus, integrating the circumstances of this case, a more accurate paraphrasing of section 444 would be: Whenever the laws of California shall require of Illinois insurance companies as a condition precedent to their doing business in California (1) compliance with laws and regulations more onerous or burdensome than those imposed by Illinois on California companies, *or* (2) shall require the deposit of securities or other obligations, or (3) require of Illinois insurance companies the payment of penalties, fees, charges or taxes greater than the penalties, fees, charges or taxes required in the aggregate for like purposes by this Code or by any other law of this State, of California insurance companies, *then* such regulations or laws of California shall apply to California companies doing business in Illinois and all California companies doing business in Illinois shall be required to make deposits, and to pay penalties, fees, charges and taxes in amounts equal to those required in the aggregate for like purposes of Illinois companies doing business in California.

When the entire section is read, particularly in light of the prefatory language, we think it clear that the legislature included within its scope only the taxes paid by insurance companies, as such, as a condition precedent to their doing business in the respective States. If it were not otherwise, and if plaintiff's theory was carried to its logical conclusions, the result would be a construction that State differences in such things as motor-vehicle fees, fuel tax and the like, required "by other law[s] of this State," were intended to be included in the computation of the retaliatory tax.

The *ad valorem* tax on personal property is not assessed as a condition precedent to the doing of an insurance business in either California or Illinois. Rather, the assessment of personal property in California is based upon the ownership, claim, possession, control or management of personal

property, (Deering's Calif. Codes Anno. Vol. 1, Revenue and Taxation, par. 442, West's Anno. Cal. Rev. & Tax Code, § 442,) while in Illinois it is imposed on the ownership of personal property in compliance with section 1 of article IX of the Illinois constitution. Any foreign insurance company may own any amount of property in Illinois without doing business in the State, and the same is true with respect to Illinois companies in California. Such companies will pay no fee or tax for the privilege of doing business, but in each instance must pay property taxes on the property it owns. Conversely, many companies may do a huge volume of business in a State but still own little or no property within such State. Under these circumstances and in light of the statutory language, it is clear that personal property taxes were not within the contemplation of the General Assembly when section 444 of the Insurance Code was enacted.

The decree of the circuit court of Sangamon County was correct and is affirmed. *Decree affirmed.*