**PRINCIPAL LIFE INSURANCE COMPANY, Appellant,**

v.

**CITY OF PHILADELPHIA TAX REVIEW BOARD and City of Philadelphia.**

Commonwealth Court of Pennsylvania.

Argued Nov. 4, 2003.

Decided Dec. 22, 2003.

George F. Nagle, Philadelphia, for appellant.

Jack M. Panitch, Philadelphia, for appellee.

BEFORE: COHN, Judge, and LEAVITT, Judge, and JIULIANTE, Senior Judge.

OPINION BY Judge LEAVITT.

Principal Life Insurance Company (Principal) appeals from an order of the Court of Common Pleas of the County of Philadelphia (trial court) that required Principal to pay a business privilege tax (BPT) on rental income it received from certain commercial properties Principal owned in the City of Philadelphia (City). In doing so, the trial court affirmed a decision of the Philadelphia Tax Review Board (Board) and rejected Principal's claim that the revenue in question was non-taxable because it was derived from the "business of an insurance company." [1] We affirm in part and reverse in part.

## BACKGROUND

The facts in this case are not in dispute.[2] Principal is a stock life insurance company incorporated under the laws of the State of Iowa and licensed to do business in Pennsylvania as a foreign insurer. As is the case for all Iowa-domiciled insurers, Principal's investments, both as to amount and type, are governed by Iowa insurance regulatory law,[3] and it permits investments in real estate.

On August 19, 1986, Principal entered into a real estate mortgage loan with Broad and Locust Associates by which it obtained a lien on an office building at 230 South Broad Street (Broad Street Property). Following a default, on or about March 29, 1993, Principal foreclosed and thereby obtained a 100% fee simple ownership in the Broad Street Property. It held and operated the building by leasing it to—and collecting rent from—commercial tenants until November 29, 1999, when Principal sold the Broad Street Property to AE–South Broad Associates, LP, an unrelated third party.

On January 16, 1987, Principal entered into a real estate mortgage loan with 1529 Associates, by which Principal obtained a lien on an office building at 1529 Walnut Street (Walnut Street Property). Following a default, on or about August 1, 1994, Principal foreclosed and thereby obtained a 100% fee simple ownership of the Walnut Street Property. Again, Principal operated the building until September 15, 1999, when the property was sold to 1529 Walnut Street Associates, an unrelated third party.

On August 22, 1998, the City filed two complaints against Principal, alleging that it had failed to file BPT tax returns on its commercial realty business for the years 1993 through 1996. However, the City withdrew the complaints after Principal voluntarily submitted information to the City's Municipal Tax Bureau about the Broad Street and Walnut Street Properties. Based on this information, the City issued Principal a BPT assessment for the

---

1. *See* Section 2 of the First Class City Business Tax Reform Act, Act of May 30, 1984, P.L. 345, *as amended*, 53 P.S. § 16182, which exempts such business from the BPT.

2. The record was established before the Board by a joint stipulation of the parties.

3. The Iowa statute provides that:
   The investment programs developed by companies shall take into account the safety of the company's principal, investment yield and return, stability in the value of the investment, and liquidity necessary to meet the company's expected business needs and investment diversification.
   Iowa Code § 511.8. "Urban real estate ... which produces income" is specified as an acceptable investment. *Id.* at § 511.8(14).

years 1993 through 1998 in the cumulative amount of $189,548.[4] This amount included both the gross receipts and net income portions of the BPT. As of March 3, 2003, interest and penalties on Principal's assessment totaled $411,918.[5]

On August 13, 1998, Principal filed a petition for abatement of the City's tax, interest and penalty assessment. After a hearing, on November 15, 2002, the Board issued a written decision denying Principal's petition. Principal then appealed to the trial court.

On March 28, 2003, after this matter was heard by the Board, but before it was decided by the trial court, the Office of the Iowa Insurance Commissioner issued a letter ruling[6] that the BPT is a tax imposed under the laws of the Commonwealth of Pennsylvania. As such, the ruling advised that Principal's payment of the BPT on its commercial realty business would trigger

the imposition of an Iowa tax retaliation upon Pennsylvania companies doing insurance business in Iowa.[7]

After receiving briefs and hearing oral argument, on May 23, 2003, the trial court denied Principal's appeal and affirmed the Board. Thereafter, Principal appealed to this Court.

On appeal, Principal raises three issues. First, it contends that under the applicable statutory law, Principal's rental income from its real property investments is nontaxable "business of an insurance company." Second, it argues that the net income portion of the BPT should not have been imposed upon Principal, which is a regulated entity and, as such, is only subject to the gross receipts portion of the BPT. Finally, Principal contends that because it acted in good faith, and without negligence or intent to defraud, there was no basis for

**4.** Stipulation, ¶ 19. Reproduced Record 5a (R.R. ___). The amount was established by stipulation subject to a correction for computational errors.

**5.** *See* Principal Reply Brief at 22. The Stipulation identifies the interest and penalties as of January 23, 2002, as "$126,777 and $219,399, respectively." R.R. 6a.

**6.** The March 28, 2003 letter was addressed to the Board and executed by James Armstrong, Deputy Insurance Commissioner for the State of Iowa (Iowa Letter Ruling). R.R. 296a. The City argues that the Iowa letter ruling has little significance. It contends that unless and until Iowa attempts to use the gross receipts tax to compute the retaliatory tax owed by a Pennsylvania company and that tax is not successfully challenged by a Pennsylvania company, *the question of whether the BPT will trigger retaliation remains undecided.*

**7.** The Iowa statute provides in relevant part as follows:

*When by the laws of any other state* a premium or income or *other taxes,* or fees, fines, penalties, licenses, deposit requirements or

other obligations, prohibitions or restrictions *are imposed upon Iowa insurance companies actually doing business in the other state,* or upon the agents of the Iowa companies, which in the aggregate are in excess of the aggregate of the taxes, fees, fines, penalties, licenses, deposit requirements or other obligations, prohibitions or restrictions directly imposed upon insurance companies of the other state under the statutes of this state, *the same obligations,* prohibitions or restrictions of whatever kind *are* in the same manner and for the same purpose *imposed upon insurance companies of the other state doing business in Iowa.*
Iowa Code § 505.14 (emphasis added).

In a retaliatory tax scheme, Iowa adopts Pennsylvania's tax burden as its own and imposes it upon the foreign insurer. The goal is to level the playing field for insurers that do business in states with varying tax schemes. The retaliatory tax equalizes taxes and raises revenues only incidentally. Accordingly, the retaliatory tax promotes interstate business of domestic insurers. *Western & Southern Life Insurance Co. v. State Board of Equalization,* 451 U.S. 648, 101 S.Ct. 2070, 68 L.Ed.2d 514 (1981) (wherein a retaliatory tax was found not to violate equal protection).

the Board's imposition of interest and penalties. We consider these issues *seriatim.*

## APPLICABILITY OF THE BPT TO PRINCIPAL'S RENTAL INCOME

The central issue in this appeal is the meaning of "business of an insurance company" as used in the taxing ordinance and its enabling statute. Principal argues for a broad reading of the term that extends beyond the sale of its insurance products, such as insurance policies and retirement annuities. It explains that all insurers must invest their assets that have been accumulated by virtue of policyholder premium payments, and these investments are essential to the insurer's ability to meet its contractual obligations to policyholders. Accordingly, "business of an insurance company" necessarily includes investment activities. The City counters that when Principal was operating two office buildings, it was doing the business of a landlord not of an insurer. Further, it argues that Principal's payment of the BPT on its realty revenue will not trigger a retaliatory tax in the State of Iowa. Both parties assert that this Court must decide the scope and meaning of the Iowa retalia-

tory tax statute[8] in order to determine whether Principal has liability for the BPT.

The First Class City Business Tax Reform Act (1984 Act), Act of May 30, 1984, P.L. 345, *as amended,* 53 P.S. §§ 16181–16193, authorizes the City to tax businesses. To that end, it defines "business" as follows:

> Carrying on or exercising, for gain or profit, within a city of the first class, any trade, business, including financial business as hereinafter defined, profession, vocation or commercial activity or making sales to persons within such city of the first class.

53 P.S. § 16182. Excluded from this definition, however, is the business of a foreign insurance company if its taxation will trigger the imposition of a retaliatory tax upon Pennsylvania insurers. Specifically, the 1984 Act states as follows:

> "Business" shall not include the following:
>
> * * *
>
> (3) *The business of any insurance company,* association or exchange, or any fraternal, benefit or beneficial so-

---

**8.** Principal contends that its payment of the BPT will trigger retaliation against Pennsylvania life insurers doing business in Iowa. The City responds that the fact that the Iowa Insurance Commissioner has pledged such a course of retaliatory action is of no moment. The real question is whether an Iowa appellate court will sustain the commissioner's action.

As noted by the City, the Iowa insurance retaliatory tax does not expressly include local taxes in the measure of relative burdens, and the retaliatory tax form promulgated by the State of Iowa does not instruct that local taxes, such as the BPT, be used in the calculation. R.R. 140a. The City also examines the practical problems Iowa would have in using the BPT to compute the retaliatory tax because it will require allocation of an Iowa

insurer's business between Philadelphia and the rest of the Commonwealth. *See, e.g., Fireman's Fund Ins. Co. v. Commissioner of Corporations and Taxation,* 325 Mass. 386, 90 N.E.2d 668 (1950) (wherein it was held that assessments paid to the cities of Boston and Worcester for the prevention of fires was not a condition of doing business in Massachusetts but, rather, in two of its political subdivisions).

Both parties invite this Court to construe the Iowa retaliatory tax statute. We do not do so because it is not necessary to complete our task, which is to construe a Pennsylvania statute. Whether imposing the BPT on Principal's commercial realty business will result in retaliation by Iowa is not dispositive of this appeal.

ciety *of any other state under the laws of which insurance companies,* associations or exchanges or fraternal, benefit or beneficial societies *of this Commonwealth* doing business in such other state *are subjected,* by reason of the tax imposed by this act, *to additional or further taxes,* fines, penalties or license fees *by such other state.*

*Id.* (emphasis added).[9]

In support of its claim that the "business of any insurance company" extends to rental income received from tenants of an office building, Principal directs our attention to the definition of "Receipts" in the 1984 Act, which provides in relevant part as follows:

> *Receipts from a person engaged in the business of insurance shall also include receipts from rental real estate* situated in cities of the first class *but shall not include interest,* dividend and capital gain receipts. Nothing in this definition shall preclude the taxation of other non-premium business receipts of persons engaged in the business of insurance.

53 P.S. § 16182 (emphasis added).[10] Principal reads the first sentence in the above-quoted provision to mean that "business of insurance" includes the operation of rental properties. Principal also believes that case law precedent supports this conclusion. The key cases relied upon by Principal are instructive and they warrant a close review.

The first case is *Levis v. New York Life Insurance Company,* 358 Pa. 57, 55 A.2d 801 (1947). At issue in *Levis* was whether a Pennsylvania statute, which authorized New York Insurance Company to own Pennsylvania realty, violated the Pennsylvania Constitution. In upholding the insurer's right to conduct this activity in Pennsylvania, our Supreme Court held as follows:

> It is common knowledge that the life insurance business is necessarily concerned with innumerable transactions involving every conceivable kind of property and interest in property . . .
>
> It requires no argument to show that *investment is an essential part of the business of a life insurance company* and that the investment of such large sums requires a wide field of possible choice.

358 Pa. at 61–62, 55 A.2d at 803 (emphasis added) (footnote omitted).

Principal next directs our attention to this Court's recent holding in *Executive Life Insurance Company v. Commonwealth,* 147 Pa.Cmwlth. 105, 606 A.2d 1282 (1992). At issue in *Executive Life* was whether a foreign insurer's revenue from the sale of annuities in Pennsylvania should be used to calculate its Pennsylvania retaliatory tax. Because annuities are not considered to be a form of insurance in Pennsylvania, Executive Life claimed that its annuity sales were not relevant to its retaliatory tax. This Court disagreed. The purpose of the retaliatory tax is to

---

**9.** These provisions appear word-for-word in the ordinance by which the City exercised its authority under the 1984 Act. THE PHILADELPHIA CODE § 19–2601 (7TH ED.1998). Since the ordinance cannot conflict with the 1984 Act, this opinion focuses on the 1984 Act rather than the ordinance. However, it goes without saying that our interpretation of the 1984 Act also interprets the ordinance.

**10.** Principal reads this provision to mean receipts "of" a person engaged in the business of insurance. Literally, "receipts from" suggests that it speaks to the landlords of insurance companies, foreign or domestic, who pay them rent. However, considering the statutory provision in its entirety, the better reading is that "receipts from" means "receipts from . . . the business of insurance."

level the playing field between insurers facing different taxing statutes from state to state. Because California taxed annuity revenue received by Pennsylvania companies from California annuity contract holders, annuity revenue was properly included in the calculation of Executive Life's Pennsylvania retaliatory tax. Accordingly, we upheld the Department of Revenue.

Principal offers *Levis* and *Executive Life* as the standards for interpreting the 1984 Act. *Levis* teaches that the business of insurance includes "every conceivable kind of property and interest in property," [11] and Principal's interests in the Broad Street and Walnut Street Properties are examples of such recognized interests. *Executive Life* directs a burden analysis to determine whether a tax will trigger out-of-state retaliation,[12] and imposition of the BPT on Principal's rental income is a "burden" on its doing insurance business in Pennsylvania. Accordingly, the BPT will be properly considered by Iowa in trying to level the playing field for Iowa insurers through the retaliatory tax. This is a good argument, but it does not address completely the statutory construction challenge posed by the 1984 Act.

The origins and meaning of the statutory term "business of insurance" are well known. The McCarran–Ferguson Act, 15 U.S.C. §§ 1011–1015, was enacted by Congress to immunize state insurance regulatory statutes from federal preemption.[13] It states:

> Congress hereby declares that the continued regulation and taxation by the several States of the *business of insurance* is in the public interest, and that silence on the part of the Congress shall not be construed to impose any barrier to the regulation or taxation of such business by the several States.

15 U.S.C. § 1011 (emphasis added). The term "business of insurance" has been the subject of extensive case law interpretation by the United States Supreme Court, and it has come to mean the relationship between a policyholder and insurer established in an insurance contract. *See Union Labor Life Ins. Co. v. Pireno*, 458 U.S. 119, 102 S.Ct. 3002, 73 L.Ed.2d 647 (1982) (using peer review committees to evaluate reasonableness of chiropractic care found not to be the business of insurance).[14] The McCarran–Ferguson Act did not establish a blanket immunization of state insurance regulatory laws from preemption. Rather, Congress provided that after June 30, 1948, the Sherman, Clayton and Federal Trade Commission Acts would be applicable to insurers unless the states regulated

---

11. *Levis*, 358 Pa. at 61, 55 A.2d at 803.

12. Where Pennsylvania insurers are under a "greater burden than California companies transacting business in Pennsylvania," then California insurers will pay a retaliatory tax to equalize the burden. *Executive Life*, 606 A.2d at 1284.

13. The McCarran–Ferguson Act was passed in response to the U.S. Supreme Court's holding in *United States v. South–Eastern Underwriters Association*, 322 U.S. 533, 64 S.Ct. 1162, 88 L.Ed. 1440 (1944). The Supreme Court held that insurance fell within the parameters of the Commerce Clause and, thus, federal statutes, such as the federal antitrust laws, ap-

plied to insurance. The McCarran–Ferguson Act effectively safeguards state insurance regulation against preemption through the dormant Commerce Clause doctrine. *Ruthardt v. United States*, 303 F.3d 375, 380 (1st Cir. 2002).

14. *See also Group Life & Health Ins. Co. v. Royal Drug Co.*, 440 U.S. 205, 99 S.Ct. 1067, 59 L.Ed.2d 261 (1979) (insurer's agreement with participating pharmacies to provide pharmacy benefits held not to be the business of insurance); *SEC v. National Securities, Inc.*, 393 U.S. 453, 89 S.Ct. 564, 21 L.Ed.2d 668 (1969) (state law regulating merger of insurers held not part of the business of insurance).

the business of insurance against the conduct proscribed by these antitrust laws.[15] In response to this Congressional push, Pennsylvania enacted the Insurance Unfair Practices Act, Act of June 5, 1947, P.L. 445, 40 P.S. §§ 1151–1162, repealed and replaced by the Unfair Insurance Practices Act, Act of July 22, 1974, P.L. 589, 40 P.S. §§ 1171.1–1171.15, to "regulate trade practices in the *business of insurance* ...." 40 P.S. § 1171.2 (emphasis added). The focus of this state law is the issuance of insurance policies and contracts, their marketing and compliance with contractual obligations. Notably, the Unfair Insurance Practices Act is silent on insurance investment activities.

We return to Section 2 of the 1984 Act, which excludes the "business of an insurance company" from the BPT.[16] 53 P.S. § 16182. It must be presumed that the Legislature used the term "business of insurance" advisedly.[17] Where "technical words and phrases ... have acquired a peculiar and appropriate meaning" that meaning is to be given where those words are used in statute. 1 Pa.C.S. § 1903(a). Consistent with the Legislature's use of the term "business of insurance" in the Unfair Insurance Practices Act, the term as used in the 1984 Act signifies the business between the insurer and the policyholder.[18] It does not include doing business as a commercial landlord, which is as attenuated from the insurer-policyholder relationship as is the merger of two insurance companies. *Securities and Exchange Commission v. National Securities, Inc.*, 393 U.S. 453, 89 S.Ct. 564, 21 L.Ed.2d 668 (1969) (wherein it was held that insurance company mergers were subject to federal statute because they were not the "business of insurance.").

However, the inquiry does not end here. Principal asserts that the focus should be on the entity, not the business, and Principal most assuredly is an insurance company.[19] It is a fact that Iowa has promised to respond to Principal's payment of the BPT with a tax retaliation on Pennsylvania insurers, and Principal contends this fact is dispositive. Stated otherwise, under Principal's interpretation, whenever the BPT may trigger retaliation on a Pennsylvania insurer, the BPT cannot be imposed

---

**15.** The McCarran–Ferguson Act provides in relevant part:

> *Provided,* That after June 30, 1948, the Act of July 2, 1890, as amended, known as the Sherman Act, and the Act of October 15, 1914, as amended, known as the Clayton Act, and the Act of September 26, 1914, known as the Federal Trade Commission Act, as amended, shall be applicable to the business of insurance to the extent that such business is not regulated by State law.

15 U.S.C. § 1012(b).

**16.** To be precise, the 1984 Act adds the word "company" to the phrase "business of insurance." This addition is not of telling significance. Insurance agents, for example, do the business of insurance, but only insurance companies pay a premium tax or a retaliatory tax. "Company" has limiting, not expansive effect on the term "business of insurance."

In any case, "business of insurance" is the exact term used in the definition of "Receipts." 53 P.S. § 16182.

**17.** It is presumed that "the General Assembly intends the entire statute to be effective and certain." 1 Pa.C.S. § 1922(2).

**18.** It is unlikely that in *Levis*, a 1947 case, the Pennsylvania Supreme Court used the term "business of insurance" to signify the activity addressed in the McCarran–Ferguson Act. In any case, the 1984 Act does not prevent insurers, foreign or domestic, from *investing in* real property, which was the question in *Levis*. The question here is the extent to which such investments may be taxed.

**19.** Principal makes this claim with greater force in its challenge to the net income portion of the BPT.

on a foreign insurer.[20] We disagree.

First, such a reading gives undue emphasis to one of the two conditions to the statutory exemption. The tax must be imposed on the "business of an insurance company" *and* trigger retaliation before it can be avoided. Both conditions must be met to claim an exemption.

Second, Principal's interpretation is at odds with the statutory definition of "Receipts," which clarifies that insurers collect "rental income." 53 P.S. § 16182. However, the statute also states that "[n]othing in this definition shall preclude the taxation of *other* nonpremium business receipts of persons engaged in the business of insurance." *Id.* (emphasis added). This expresses a legislative intention that rental income and "other nonpremium business receipts" may be taxed under the 1984 Act.

Finally, the language of the 1984 Act authorizes taxation of business without regard to the legal form by which that business is conducted. The 1984 Act defines "business" as "[c]arrying on ... for gain or profit ... any trade, business, ... profession, vocation or commercial activity...." 53 P.S. § 16182. A single corporation may conduct separate and discrete businesses and place them into divisions or departments of the corporation; alternatively, each business may be placed into a separate but affiliated corporation. In focusing on "business activity" the 1984 Act does not allow the corporate or other form of organization to determine tax liability.[21]

We agree with Principal's contention that its activities as a passive investor are exempt from the BPT. Indeed, this is reflected in the 1984 Act's definition of "Receipts," which expressly exempts interest, dividends and capital gains from the BPT. So long as Principal's interest in the Broad Street and Walnut Street Properties was limited to collecting interest payments, its realty business was not subject to taxation.[22] However, when Principal foreclosed on the two commercial properties, it crossed the line from passive to active investor.[23] Principal's active business of owning and operating office buildings in the City for several years was not the "business of [an] insurance compan[y]," and its receipts from this business are taxable under the 1984 Act.

In denying Principal's petition for abatement of the assessment, the Board made note of a decision of the Illinois Supreme Court in *Pacific Mutual Life Insurance Company v. Gerber*, 22 Ill.2d 196, 174 N.E.2d 862 (1961). In construing the ap-

20. Such a directive could have been expressed very simply; instead, we have a statutory provision byzantine in its choice of words and structure.

21. Some insurers may choose to operate their realty investments from an affiliate corporation, and the affiliate would be liable for the BPT because it could never be subject to an insurance retaliatory tax. There is no principled reason to favor insurers, which choose to operate their realty business from a division rather than from a separate corporation, by relieving them of the BPT.

22. During this time, Principal's mortgagors on the Broad Street and Walnut Street Prop-

erties would have had to pay the BPT on rental revenue received from leasing two buildings. Whether they actually paid the BPT is not known; however, the mortgagors certainly could not claim exemption because its mortgagee, Principal, was a foreign insurer.

23. The Board suggested that Principal should have sold the buildings immediately upon foreclosure. Principal correctly rejoins that it was necessary to operate the buildings, at least for a time, to protect their investment. A quick sale could have produced a fire sale price. Sound investment management is essential to payment of claims, as noted by our Supreme Court in *Levis*.

plicable retaliatory tax statute,[24] the Illinois Supreme Court concluded that only those taxes paid by insurance companies as a condition to doing the business of insurance should be given credit. It reasoned as follows:

> [W]e think it clear that the legislature included within its scope *only the taxes paid by insurance companies, as such, as a condition precedent to their doing business* in the respective States. If it were not otherwise, and if plaintiff's theory was carried to its logical conclusions, the result would be a construction that State differences in such things as motor-vehicle fees, fuel tax and the like, required "by other law(s) of this State," were intended to be included in the computation of the retaliatory tax.
>
> The *ad valorem* tax on personal property is not assessed as a condition precedent to the doing of an insurance business in either California or Illinois. Rather, the assessment of personal property in California is based upon the ownership, claim, possession, control or management of personal property.... Any foreign insurance company may own any amount of property in Illinois without doing business in the State, and the same is true with respect to Illinois companies and California. Such companies will pay no fee or tax for the privilege of doing business, but in each instance must pay property taxes on the property it owns.

*Id.* at 201–202, 174 N.E.2d at 865–866 (emphasis added). Thus, only those taxes paid by an insurer as a "condition precedent to their doing business" were used in the computation of a retaliatory tax. *Id.*[25]

■ We agree with the *Pacific Life* analysis.[26] Principal did not need to be licensed as a foreign insurer in order to

---

24. Pacific Life sought credit for the *ad valorem* tax payments it made in the State of Illinois.

25. The obvious, of course, is the State premium tax. 72 Pa.C.S. § 7902.

26. This analysis is consistent with that used in several jurisdictions. In *Industrial Indemnity Co. v. Cooper*, 81 N.Y.2d 50, 595 N.Y.S.2d 726, 611 N.E.2d 765 (1993), foreign insurers sought a credit against their New York retaliatory tax payments for payment of the New York City commercial rent tax. The New York Court of Appeals denied them this credit, holding that the tax was not imposed on the business of insurance, but, rather, imposed on all renters of commercial real estate in the city. The Court of Appeals reasoned that

> Given the purpose of the retaliatory tax to promote interstate commerce by allowing both domestic and foreign insurers to compete on an equal basis and the absence of an express grant of a credit for the commercial rent tax, it would be inconsistent to read [New York Insurance Law] section 1112 as including payments made for the

privilege of doing any business without regard to the nature of the business, such as the commercial rent tax at issue herein. *Id.* at 54, 595 N.Y.S.2d 726, 611 N.E.2d at 767.

In *Continental American Life Ins. Co. v. City of Wilmington*, 273 A.2d 277 (Del.Super.1970), an insurer challenged a $200 license fee on an office building it owned, claiming that it would trigger retaliation against Delaware insurers. The court held, however, that the operation of real estate buildings did not constitute the "business of insurance" as that term is used in retaliatory tax statutes.

Principal, in response, directs the Court to a number of cases where payment of local taxes could be used as a credit against payment of a retaliatory tax. *See, e.g., Phoenix Home Life Mutual Ins. Co. v. Curiale*, 162 Misc.2d 142, 615 N.Y.S.2d 967 (N.Y.Sup.Ct. 1994) (wherein a franchise tax on receipts and net income should be included in the retaliatory tax calculations); *Pacific Mutual Life Ins. Co. v. Bushnell*, 97 Ariz. 18, 396 P.2d 253 (1964) (wherein the Arizona Supreme Court allowed a credit on *ad valorem* taxes paid to calculate the retaliatory tax owned by the foreign insurer).

invest in the Broad Street and Walnut Street Properties. The "business of an insurance company" cannot include every endeavor undertaken by an insurance company to support its core business of selling insurance products. This would lead to unjust and improper results. The BPT is used to fund the delivery of vital services, such as police and fire protection, that are needed by commercial landlords, including Principal, to operate their office buildings. There is no sound policy reason why the costs of these services should be transferred to other taxpayers; not even the promotion of Pennsylvania-domiciled insurers justifies such a result.

Accordingly, we affirm the trial court. We hold that Principal's receipts in the form of rental income from its commercial realty business are taxable under the 1984 Act.[27]

## NET INCOME PORTION OF THE BPT

Principal contends that even if this Court determines that the BPT was properly applied to Principal's rental income, the trial court still must be reversed. It asserts that the Board erred by including Principal's net income from operating its two buildings in its BPT assessment.

27. Because we uphold the trial court, we need not reach the constitutional issues raised by the City.

28. In 1996, the millage was changed to 3 mills; and in 1997 to 2.95 mills; in 1998 to 2.875 mills; and in 1999 to 2.775 mills. The Philadelphia Code § 19–2604(1)(e), (f), (g) and (h). The cap remained 6½% of net income.

29. In 1996, the rate changed to 3 mills; in 1997 to 2.95 mills; in 1998 to 2.875 mills; and in 1999 to 2.775 mills. The Philadelphia Code § 19–2604(2)(e), (f), (g) and (h). The net income tax rate remained 6½%.

30. The difference in tax rates between regulated and non-regulated businesses may be

The Broad Street Property was taxed between 1993 and 1999, and the Walnut Street Property was taxed between 1994 and 1999. During that period, the rate of taxation changed, but the method of computation did not. In 1993, the applicable tax rate was stated as follows for regulated industries:

*Every regulated industry* shall pay an annual tax for the tax years 1990 and thereafter at the rate of three and one-quarter (3¼) mills on each dollar of annual receipts thereof, provided, however, that the amount payable shall not exceed six and one-half percent (6½%) of its net income.

The Philadelphia Code § 19–2604(1)(d) (emphasis added) (footnote omitted).[28] The Code also provided:

*Every business* other than regulated industries shall pay an annual tax for the tax years 1990 and thereafter at the rate of three and one-quarter (3¼) mills on each dollar of annual receipts thereof, and six and one-half percent (6½%) of its net income. . . .

The Philadelphia Code § 19–2604(2)(d) (emphasis added).[29] Thus, regulated industries have their taxation based solely upon gross receipts, which is capped at 6½% of their net income.[30] Other businesses

explained by the difference in revenue. Insurers, for example, have vast premium receipts, and to tax those revenues without a cap would result in excessive taxation. Of course, here the BPT was not applied to Principal's premium receipts. Theoretically, premium revenue of a foreign insurer could be taxable under the 1984 Act if imposition of the BPT would not lead to retaliation; this could happen where the premium tax in the other state was much higher than Pennsylvania's. In that case, the foreign insurer should be able to claim payment of the BPT as a credit towards its Pennsylvania retaliatory tax.

pay tax on both their gross receipts and their net income. A "regulated industry" is defined as "[a] person subject to a tax pursuant to Articles VII, VIII, IX or XV of the Tax Reform Code of 1971 or any public utility...." THE PHILADELPHIA CODE § 19–2601.[31]

Because Principal is subject to the Pennsylvania premiums tax, it contends that it is "a regulated industry," and, thus, should have been excused from the net income portion of the BPT. Principal further contends that in failing to apply the same BPT tax rates to Principal that are applied to other life insurance companies, the City has not only violated the BPT Ordinance, it has violated the uniformity clause of the Pennsylvania Constitution[32] and the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.[33]

For the years in question, the City has assessed Principal $48,754 for the gross receipts portion of the BPT and $140,794 for the net income portion of the BPT, totaling $189,548 (Stip. ¶¶ 19, 20 and 22, R.R. 5a. and 6a). The City did not use Principal's premium income to calculate its BPT with respect to either portion of the BPT. Rather, the gross receipts used to calculate the BPT were those received from tenants of the Broad Street and Walnut Street Properties. In short, the City treated Principal's real estate business as separate and discrete from the insurance business on which Principal paid a premiums tax.

The trial court did not address this issue raised by Principal. The City suggests that the trial court did not rule on this aspect of Principal's appeal because Principal did not raise the issue in the hearing before the Board. The Local Agency Law, 2 Pa.C.S. § 753(a), provides that "if a full and complete record of the proceedings before the agency was made such party may not raise upon appeal [to the trial court] any other question not raised before the agency...." It is possible, as argued by the City, that the trial court believed that Principal's challenge to the net income portion of the BPT was not preserved. It is also possible that the trial court believed that Principal's commercial real estate operation was a division of a regulated industry but not itself a regulated industry. We decline to speculate on the trial court's reasons for not deciding the question.

In the absence of any decision by the trial court on Principal's challenge to the net income portion of the BPT, we do not rule on this issue of Principal. Instead, we remand the matter to the trial court for a decision.

## PENALTIES AND INTEREST

Interest and penalties may be abated in whole or in part where the taxpayer has acted in good faith and without negligence and had no intent to defraud. THE PHILADELPHIA CODE § 19–1705(2). The Board, however, refused Principal an abatement, asserting that Principal was "reckless" in its failure to file a BPT tax return without obtaining a ruling from the City.

To support its argument that it acted in good faith, Principal notes that in 1976, the

---

**31.** The Tax Reform Code of 1971, Act of March 4, 1971, P.L. 6, *as amended*, 72 P.S. §§ 7101–10004, establishes a bank and trust company shares tax in Article VII (72 P.S. § 7701), a title insurance company shares tax in Article VIII (72 P.S. § 7801), an insurance premium tax in Article IX (72 P.S. § 7901), a utilities tax in Article XI (72 P.S. § 8101) and

a mutual thrift institutions tax in Article XV (72 P.S. § 8501).

**32.** PENNSYLVANIA CONSTITUTION, Art. VIII, § 1.

**33.** UNITED STATES CONSTITUTION amend. XIV, § 1.

City issued a ruling that investment income of an insurance company was excluded from the BPT under the Retaliatory Tax Exclusion, the same exclusion on which Principal relies.[34] In 1992, in *In Re: E/R Associates* (Philadelphia Tax Review Board Opinion No. 92–C, January 6, 1992), R.R. 283a, the City stipulated and the Board held that rental income from real estate investments was considered to be income from "insurance business" for purposes of establishing an exclusion from the BPT.[35] Finally, Principal had never been required by any Pennsylvania municipality to pay a business privilege tax. This does appear to be a question of first impression.

The trial court held that Principal failed to make a record in support of its claim that it acted in good faith. However, that charge can also be levied at the City, which did not make a record in support of its claim that Principal acted "recklessly." Indeed, it is not clear what record can be made where, as here, the taxpayer offers a reasonable legal position to explain why it did not file a BPT return.

■■■ This Court has held, and we do so here, that where a taxpayer has a meritorious legal position, interest and penalties should be abated. *See Samuel Rappaport Ltd. Partnership v. Tax Review*

*Board of the City of Philadelphia*, 682 A.2d 862 (Pa.Cmwlth.1996) (holding where the taxpayer had a valid and meritorious position in taking an appeal, penalties assessed should be abated);[36] *Fidelity–Philadelphia Trust Co. v. Hines*, 337 Pa. 48, 10 A.2d 553 (1940) (holding that harsh penalties and unusual interest rates cannot be imposed, pending litigation intended to test the construction or validity of an act, so as to deter or intimidate parties affected thereby from resorting to the courts for that purpose).[37] Under these circumstances, it was an abuse of discretion for the Board to impose penalties on Principal's unpaid principal amount of the BPT.

In *Nine Penn Center Associates v. Tax Review Board of the City of Philadelphia*, 692 A.2d 246 (Pa.Cmwlth.1997), we abated penalties, but not interest, where, as here, the taxpayer's legal challenge to the BPT was not frivolous. In that case, this Court found that the interest was reasonable. Here, the record shows that interest and penalties as of March 3, 2003, totaled $411,918, as compared to an underlying assessment of $189,548. We do not know what part of the $411,918 represents penalties and what part represents interest. Given this record, we cannot say whether the interest is reasonable or unreasonable.

**34.** *See Home Life Ins. Co. of America—Philadelphia Mercantile License Tax,* Tax Ruling No. 76–1 (March 17, 1976), R.R. 289a.

**35.** The City disputes Principal's analysis of this holding. It contends that the holding concerned a partnership that included an insurance company as partner. The City stipulated for purposes of litigation that the partnership's payment of the BPT would trigger the New York retaliatory tax. However, the City claims there was no intention to establish precedent on the meaning of "business of an insurance company." In any case, the City contends that this opinion was not binding on the City in subsequent actions.

**36.** In *Nine Penn Center Associates v. Tax Review Board of the City of Philadelphia,* 692

A.2d 246 (Pa.Cmwlth.1997), this Court followed *Rappaport,* stating that the Court must be wary of situations that might deter or intimidate parties from resorting to the courts to test the construction of an act.

**37.** In *Dole v. City of Philadelphia,* 337 Pa. 375, 11 A.2d 163 (1940), the Pennsylvania Supreme Court held that where the so-called default arises because of a bona fide contest, "it would be inequitable to exact the penalties and interest in addition to the tax and for that reason they should not be recovered." *Dole,* 337 Pa. at 384, 11 A.2d at 168 (quoting *Appeal of Fidelity—Philadelphia Trust Co.,* 337 Pa. 34, 41, 10 A.2d 547, 550 (Pa.1939)).

Principal presented a viable legal contest in a question of first impression, and the Board did not explain why that fact was not sufficient to support abatement of at least some of the interest. Instead, it simply offered its conclusory "opinion" that Principal was "reckless" without reference to the record.

Accordingly, we remand for a determination of whether the interest imposed on Principal was unreasonable in light of the fact that Principal exercised its legal right to litigate a case of first impression.

## CONCLUSION

For the above-stated reasons, we affirm in part and reverse in part. We affirm the trial court's holding that the conduct of a commercial realty business is not the "business of an insurance company" even if it will lead to tax retaliation by the State of Iowa against Pennsylvania insurers. We reverse the trial court's refusal to abate penalties. We remand Principal's challenge to the net income portion of the BPT and the issue of appropriate interest for a decision by the trial court. Accordingly, we vacate the trial court's order and remand this matter for further proceedings.

## ORDER

AND NOW, this 22nd day of December, 2003, the order of the Court of Common Pleas of Philadelphia County dated May 23, 2003, in the above-captioned matter is hereby vacated and the case remanded to the trial court for further proceedings consistent with the attached opinion.

Jurisdiction relinquished.